Matthias, J.
 

 The parties to this, action agree that the purpose and object of the proposed “plan of recapitalization,” among others, was the alteration of the original agreement made by the corporation with the preferred shareholders, which agreement, incorporated, in both the articles of incorporation and the certificates of shares, provided that the holders of such preferred shares were entitled to receive dividends on such shares of five per cent per annum annually out of the surplus profits of the company for each year, in preference to all other shareholders, and that such dividends should be cumulative.
 

 The record in this case shows that as of July 31, 1943, which date was prior to the recapitalization, the financial statement of the corporation stated the earned surplus account as follows:
 

 
 *137
 
 “Balance at August 1, 1942,.............$ 42,584.43
 

 “Balance transferred from profit and loss 52,480.96
 

 $ 95,065.39
 

 ‘ ‘ Dividends paid cash:
 

 “First preferred — $6.25 per share ......$ 17,062.50
 

 “Balance at July 31, 1943,........$ 78,002.89”
 

 The record shows also that as of July 31,1944, after the recapitalization had been carried out, the first preferred five-per-cent cumulative shares having been canceled, and the 2,750 shares of five-per-cent noncumulative preferred shares and the 2,750 shares of class A common stock issued in place thereof, the earned surplus account stood as follows:
 

 “Balance at August 1, 1943,.............$ 78,002.89
 

 “Balance for the year transferred from
 

 profit and loss ..................... 31,260.65
 

 $109,263.54
 

 ‘ ‘ Cash distribution and dividends:
 

 “On first
 
 preferred
 
 — 5% cumulative stock (changed under plan of recapitalization) — $11.25 per share (includes $10 special distribution under plan) ...................$30,543.75
 

 “On preferred 5% noncumulative stock — $2.50 per share 6,787.50 $ 37,331.25
 

 “Balance at July 31, 1944 $71,932.29”
 

 A comparison of these financial statements clearly discloses the effect of the plan of recapitalization. As of July 31, 1943, there was in the earned surplus account the sum of $78,002.89 to which the holders of preferred shares had a preference in that their unpaid cumulative dividends were to-be paid from such funds before any dividends could be declared and paid
 
 *138
 
 to the holders of the common shares. As of July 31, 1944, there remained in the earned-surplus account the sum of $71,932.29, but the holders of the first preferred shares no longer had a claim thereto for their •cumulative unpaid dividends, for the reason that such sum became available for distribution to the holders of the common shares subject only to the requirement of payment of
 
 current
 
 dividends upon preferred shares.
 

 To succinctly state the proposition presented: The preferred shareholders were required to accept additional shares of stock, and the common shareholders were accorded the right to the accumulated earnings.
 

 The plan of recapitalization is,alleged to have been evolved pursuant to and in conformity with the provisions of Sections 8623-14, 8623-15 and 8623-72, General Code. Counsel for the defendants concede that the effect of the proposed plan is “to adjust and eliminate rftideclared cumulated dividends of $50 per share on the' preferred shares and to recapitalize the company. ’ ’
 

 The general corporation laws of Ohio were revised, consolidated and codified in 1927 (112 Ohio Laws, 9); in 1929 (113 Ohio Laws, 413) extensive amendments were made; and again in 1939 (118 Ohio Laws, 177).
 

 These statutory provisions expressly conferred upon corporations the power to make substantial amendments to their articles of incorporation, which amendments were not theretofore authorized, particularly by changes in the classes of outstanding and issued shares of stock, and provided a specific remedy by way of appraisal and ascertainment of the fair cash value of shares held by any dissenting shareholder and payment therefor upon demand. The amendment of 1939 expressly authorizes a corporation to “change any or all of the express terms and provisions or designations of issued or unissued shares of any class or series; which change, if desired, may include the dis
 
 *139
 
 charge, adjustment or elimination of rights to accrued undeclared cumulative dividends on any such class.” Section 8623-14 (3) (i). General Code.
 

 The plan of recapitalization involved in this proceeding was proposed and effectuated after the 1939 amendment, and neither party complains of any failure to fully comply with the requirements of the statutes. The issue here presented arises out of the claim of the plaintiffs that these statutes, as amended in 1939, can have no application to their shares; that the plan of recapitalization requires a retroactive application of the terms of these statutory provisions; that no plan is valid which affects their rights under their contract to earnings accumulated either before or subsequent to the effective, date of the 1939 amendment; and that, therefore, the action of the Court of Appeals in holding that these statutes affected such rights of the plaintiff to dividends accruing after 1939 is erroneous.
 

 On the other hand the defendants claim that the plan of recapitalization was fully authorized and that all cumulative dividends were thereby legally canceled. They further claim that the Court of Appeals erred in holding that only the cancellation of dividends accruing subsequent to 1939 is valid and lawful.
 

 The authority granted by Section 8623-14 (3) (i), General Code, is clear and unambiguous and is sufficiently broad to authorize the cancellation of dividends accruing either previous or subsequent to the effective date of that section.
 

 It is clear that the particular effect of the consummation of the plan is to cancel the obligation of the corporation to pay to the preferred shareholders the unpaid cumulative dividends and to abolish the preferential rights of such shareholders, specified not -only in their respective certificates of stock but also in the articles of incorporation under which the stock was issued. Therefore, the question of law presented is
 
 *140
 
 whether the provisions of the statute referred to may be applied retroactively to authorize a plan, the effect of which will be to revoke the contractual rights of preferred shareholders whose shares were subscribed for prior to the enactment of those statutes.
 

 It is pointed out that the protective provisions of the contract involved herein are limited to cumulative dividend rights in earnings with priority over the common shares, priority rights in distribution of assets over the common shares in event of dissolution, and the right to par plus accrued dividends upon redemption. Such preferred shares are excluded from participation in the selection of the directors, and further there is no provision for a sinking fund for the redemption of the preferred shares, no restriction upon debts or incumbrances and no limitation upon the relative amounts of preferred and common shares. From these facts it is logically argued that the elimination of the cumulative-dividend provision would result in a serious impairment of the value of the shares and possibly even make them less desirable than the common. The conclusion is irresistible that the compulsory provision of -the proposed plan would deprive the preferred shareholders of accrued dividends and require a sacrifice of the benefits secured to them by their contract.
 

 If such retroactive legislation may be justified under . the Constitution of Ohio, such justification must result from the application of the so-called “reserved power” provision as found in Section 2, Article XIII. This section-provides as follows: “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed. * * * ’7
 

 It is difficult to see how this specific grant of authority to alter or repeal corporation laws exceeds or differs from the power conferred upon the General Assembly by provisions of Section 1, Article II of the Constitution. Under the authority thereby conferred,
 
 *141
 
 the General Assembly unquestionably has the power to alter or repeal any statute theretofore enacted by it. The power and the authority of the legislative body, however, has specific and absolute limitations under the Ohio Constitution. It is specifically provided by Section 28, Article II of the Ohio Constitution that “The General Assembly shall have no power to1 pass retroactive laws, or laws impairing the obligation of contracts s
 

 The provision of Section 19, Article I of the Ohio Constitution preclude the taking of private property even for public purposes except as therein provided. ,
 

 The preferential rights of the plaintiffs to the accrued unpaid dividends under their contract were vested and absolute as between the parties and enforceable in a court of law until the corporation, a party to the contract, undertook to abolish and eliminate such rights of the preferred shareholders to the gain and profit of the common shareholders.
 

 The constitutional limitations upon the power of the General Assembly to pass retroactive laws or laws impairing the obligations of contracts apply most aptly and with particular force to the present situation. If Section 8623-14 (3) (i), General Code, were applied to the contract of these preferred shareholders the result would be to completely abrogate their contract, deprive them of the benefits thereof and presumably secured thereby, and enrich the holders of the common shares by transferring to them the outright ownership of the accumulated earnings in which, under the terms. of their contract, the preferred shareholders 'had vested rights.
 

 The meaning and extent of the “reserved power,” as that term is used in the state Constitution, are well stated in 13 American Jurisprudence, 473, Section 421, as follows:
 

 “Alteration of rights. — The ultimate test of the validity of statutes passed after issuance of the stock
 
 *142
 
 affected, which authorize a change in the obligations of a corporation to the stockholders, is whether the change under consideration can be said to come within the reserved power of the Legislature to alter or amend the corporate charter or articles or certificate of incorporation. Some courts have adopted the view that whether a power to amend corporate charters reserved to the state by statute or Constitution protects a proposed change in the obligations of a corporation to its stockholders, authorized under enabling legislation enacted subsequent to the issuance of the corporate stock affected, depends upon whether the proposed change is directed toward those features of the contract embraced in the corporate charter in which the state has an interest or relates to those features dealing with the private rights between the stockholders and the corporation or between the stockholders
 
 inter se,
 
 such courts feeling that the reservation of power to amend corporate charters is applicable only to those features of the contract affected with a public interest and that the private rights of the stockholder as against the corporation or his fellow stockholders are protected from alteration by the inhibition against the impairment of contracts. It has been held, too, that whether a proposed change in the, obligations of a corporation to its stockholders is sanctioned by the reserved power to amend or alter the corporate charter depends on whether the change affects vested rights of the stockholders as distinguished from preferential rights.”
 

 Very pertinent also is the following statement in 13 Fletcher Cyclopedia Corporations (Perm. Ed.), 86, Section 5776:
 

 “* * # The true view is that the power to alter, amend or repeal charters is reserved by the state ‘solely’ for the purpose of avoiding the effect of the decision in the
 
 Dartmouth College case
 
 [17 U. S. (4 Wheat.), 518, 4 L. Ed., 629]; that the charter of a corporation is a contract between the state and the cor
 
 *143
 
 poration within the constitutional prohibition against laws impairing the obligation of contracts, and that, the purpose of the reservation is to enable the state to impose such restraints upon corporations as the Legislature may deem advisable for protection of the public. Such power is not reserved in any sense for the benefit of the corporation, or of a majority of the stockholders, upon any idea that the Legislature can alter the contract between the corporation and its stockholders, nor for the purpose of enabling it to. do so.”
 

 We quote also the following from the same authority, Volume 7, 835, Section 3681:
 

 “Constitutional limitations and restrictions. The reserved right of amendment, alteration or repeal, whether contained in a statute or constitutional provision, must be exercised in subjection to the various other constitutional commands and restrictions. Due process of law must be observed, and there must be no denial of the equal protection of the laws, nor impairment of the obligation of contract.”
 

 Many cases may be cited supporting the text, among which are:
 
 Yoakam
 
 v.
 
 Providence Biltmore Hotel Co.,
 
 34 F. (2d), 533;
 
 Morris
 
 v.
 
 American Public Utilities Co.,
 
 14 Del. Ch., 136, 122 A., 696;
 
 Keller
 
 v.
 
 Wilson & Co., Inc.,
 
 21 Del. Ch., 391, 190 A., 115;
 
 Consolidated Film Industries, Inc.,
 
 v.
 
 Johnson,
 
 22 Del. Ch., 407, 197 A., 489;
 
 Johnson
 
 v.
 
 Consolidated Film Industries, Inc.,
 
 22 Del. Ch., 262, 194 A. 844;
 
 Pronick
 
 v.
 
 Spirits Distributing Co.,
 
 58 N. J. Eq., 97, 42 A., 586;
 
 Lonsdale Securities Corp.
 
 v.
 
 International Mercantile Marine Co.,
 
 101 N. J. Eq., 554, 139 A., 50;
 
 Sutton
 
 v.
 
 Globe Knitting Works,
 
 276 Mich., 200, 267 N. W., 815, 105 A. L. R., 1447;
 
 Coombes
 
 v.
 
 Getz,
 
 285 U. S., 434, 76 L. Ed., 866, 52 S. Ct., 435;
 
 Phillips Petroleum Co.
 
 v.
 
 Jenkins,
 
 297 U. S., 629, 80 L. Ed., 943, 56 S. Ct., 611;
 
 Shields
 
 v.
 
 Ohio,
 
 95 U. S., 319, 24 L. Ed., 357;
 
 Johnson
 
 v.
 
 Bradley Knitting Co.,
 
 228 Wis., 566, 280 N. W., 688;
 
 Allen
 
 v.
 
 White,
 
 103. Neb.,
 
 *144
 
 256, 171 N. W., 52;
 
 Hueftle
 
 v.
 
 Farmers Elevator,
 
 145 Neb., 424, 16 N. W. (2d), 855;
 
 Romer
 
 v.
 
 Porcelain Products, Inc.,
 
 23 Del. Ch., 52, 2 A. (2d), 75;
 
 Garey
 
 v.
 
 St. Joe Mining Co.,
 
 32 Utah, 497, 91 P., 369, 12 L. R. A. (N. S.), 554.
 

 Comparatively recent decisions of this court, which have some pertinency to the issue presented in this case, are
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 177 N. E., 594, 79 A. L. R., 614;
 
 Johnson
 
 v.
 
 Lamprecht,
 
 133 Ohio St., 567, 15 N. E. (2d), 127; and
 
 Wildermuth
 
 v.
 
 Lorain Coal & Dock Co.,
 
 138 Ohio St., 1, 32 N. E. (2d), 413.
 

 Under the decision in the
 
 Geiger case
 
 the certificates of shares of these several plaintiffs constituted contracts between them and the corporation which the latter is powerless to impair.
 

 Under the holding of this court in paragraph three of the syllabus in the
 
 Lamprecht case,
 
 the plaintiffs herein are not relegated to the remedy provided by Section 8623-72, General Code, since the amendment of the articles of incorporation in the respect indicated is.illegal and the statutory remedy is therefore not exclusive. However, as held in the
 
 Wildermuth case,
 
 such shareholders may, if they desire, avail themselves of the statutory remedy .
 

 It is to be observed that the
 
 Lamprecht case
 
 involved an optional plan of recapitalization. As stated by Judge Gorman in the opinion :
 

 “In all of the cases cited, where equitable relief was obtained, a compulsory plan was proposed. In this case the plan is optional.
 

 “The plaintiffs in this case are not compelled to exchange their stock. They are at liberty to retain their present preferred stock upon the same terms and conditions as they now hold it.”
 

 Following the citation of decisions supporting the proposition that “attempts by the majority to effect a compulsory exchange of stock that will eliminate eith
 
 *145
 
 er a sinking; fund established for the benefit of the preferred holders, or to cancel unpaid accumulative dividends have been enjoined,” Judge Gorman made the further statement that “these decisions proceed upon the theory that a shareholder who holds preferred stock upon which there are past due and accumulative dividends has a vested right in the surplus $,nd earnings of the corporation until the dividends are paid. These unpaid dividends are treated as if they were in the nature of a debt.”
 

 We direct attention also to the following very pertinent statement in the opinion of Judge Turner in the
 
 Wildermuth
 
 case:
 

 “* * # Of course, the dissenting shareholder may not prejudice the rights of creditors, but it never was the intention of the Legislature that corporate rhanagement might secure capital upon the representation that the investment was to be safeguarded by provisions acceptable to the investor and then, after the investment had been made, that the corporate management or a majority of its shareholders might repudiate any part of the contract through which it had secured a part of its capital. ’ ’
 

 There could be no basis for the contention in this case that the statutory provisions involved herein were enacted for or in fact served any public purpose. The provisions of the proposed plan, insofar as they undertake a retroactive application of these statutory provisions and thus impair the contract of the preferred shareholders and thereby deprive them of the rights stipulated therein, are invalid.
 

 It should be observed .that no question relative to the prospective application of these statutes is presented, and, therefore, is not considered or decided.
 

 This being a class suit as defined by Section 11257, General Code, it was properly brought by plaintiffs for themselves and on behalf of those similarly situated. See
 
 Haggerty
 
 v.
 
 Squire, Supt. of Banks,
 
 137 Ohio St.,
 
 *146
 
 207, 28 N. E. (2d), 554, where it was held in paragraph two of the syllabus:
 

 “Where a number of persons have separate and individual claims and rights of action against the same party, but all such claims arise from a common source and represent a like interest, the whole matter may be litigated in a single action brought by all of the claimants as coplaintiffs, or, in case the parties are numerous making it impracticable to bring them all before the court, by one or more of them suing for himself or themselves and on behalf of the other claimants.”
 

 The Court of Appeals held that the factual situation attending the acquisition of the preferred shares differed in each case as to the time of purchase, and that as to the various shareholders, different claims and defenses would be involved, and, therefore, the shareholders did not properly constitute a class for which a suit may be brought. However, the record shows that the parties, themselves, by stipulation in the Court of Common Pleas divided the preferred shareholders into classes in accordance with the attitude of each as to consent, acquiescence or opposition in connection with the recapitalization. The Court of Common Pleas, by reason of its dismissal of the petition of the applicants, did not consider the respective rights of these classes.
 

 The determination of the question as to who consti- ■ tuted the class of shareholders “similarly situated” with the plaintiffs being undetermined, the case is remanded to the Court of Appeals for further proceedings in accordance with this opinion. In the respects indicated, the decree of the Court of Appeals is reversed and the cause remanded to that court.
 

 Decree affirmed in part and reversed in part.
 

 Weygandt, C. J., Zimmerman, Bell, Williams, Turner and Hart, JJ., concur.