Matthias, J.
 

 The plaintiffs and intervening plaintiffs are the owners of 102 first preferred shares of The Standard Boiler & Plate Iron Company, issued under date of January 1, 1929.
 

 The articles of incorporation contained the following provisions:
 

 “First. The holders of record of the first preferred stock shall be entitled to' receive, when and as declared by the board of directors of the corporation, dividends at the rate of seven per cent (7%) per annum, payable quarterly upon the first days of January, April, July and October in each year before any dividends shall be declared or paid upon or set apart for the second preferred stock or the common stock of the company. Such dividends shall be cumulative from the first day of January, 1929 * * *.
 

 “Second. All or any part of the shares of .the first preferred stock are subject to call for redemption and may be redeemed, by lot or by purchase, at any time at the option of the corporation on or after January 31, 1933, * * * at one hundred and five dollars ($105) per share of any stock so called for redemption and at one dollar ($1) less than one hundred and five dol
 
 *457
 
 lars ($105) per share for each year after December 31, 1933, that such shares may be unredeemed in this manner; provided, however, that no time shall the redemption price of said first preferred stock be less than one hundred and one dollars ($101) per share. -h* ^ *
 

 “Third. # * the holders of shares of first preferred .and second preferred stock shall riot be entitled to vote or otherwise participate in the affairs of the corporation until the corporation is in default in the payment of eight (8) consecutive cumulative quarterly dividends on its first preferred stock, whereupon and ■during the existence of such default the holders of shares of first preferred stock shall be entitled to exercise such voting power * *
 

 Dividends on the first preferred shares in excess of •$56 per share were in arrears and unpaid on February 2,1939, when the company adopted a plan of recapitalization.
 

 The articles of incorporation were thereby amended to “authorize” 4,000 no par common shares and to cancel the then present issue of first preferred and second preferred shares and all indebtedness due the holders of such preferred shares by way of accrued •dividends. The new certificates of common shares denominated as stock A were to be issued, share for share, .for the first preferred shares, and new certificates of common shares denominated common stock B were to be issued, share for share, for the second preferred shares.
 

 The interests of the holders of common stock A in event of dissolution were to be given preference to the extent of $100,000 and the common stock B shareholders were to receive the next $50,000. The holders of the common stock A were also given preference in the payment of dividends to the extent of $7,000 in any
 
 *458
 
 given year, and the holders of the common stock B were given preference to the extent of $3,500 in any-given year.
 

 The recapitalization plan received the approval of' two-thirds of the shareholders in each class, but the-plaintiffs refused to exchange their shares for the-newly issued common class A shares. On December-14, 1942, the board of directors of the corporation authorized a dividend on the outstanding common shares.. Thereupon the plaintiffs brought this action seeking to< require the corporation to pay them the amounts then due on the first preferred shares by reason of unpaid cumulative dividends.
 

 On January 1, 1929, the date of issuance of the first preferred shares of the corporation, Section 8623-14,. General Code (112 Ohio Laws, 14), a part of the General Corporation Act, provided in" part as follows:
 

 “A corporation may amend its articles in any respect; provided, however, that only such provisions-shall be included or omitted by amendment as it would be lawful to include in or omit from original articles made at the time of making such amendment, but the-purpose or purposes for which the corporation was formed shall not be substantially changed unless it is-otherwise provided in the articles. In particular, without prejudice to the generality of such power of amendment, a corporation may, by amendment:
 

 “(b) Change issued shares having par value into-the same or a different number of shares without par-value ;
 

 “(e) Change unissued or issued shares of any clas& into shares of another class theretofore or thereby created;
 

 
 *459
 
 “ (i) Create a new class of shares;
 

 “The stated capital of a corporation shall not be reduced except in the manner hereinafter provided.” The question of law presented to this court is whether under the applicable statute the corporation was ■authorized to cancel the preferred shares, require the holders of the first preferred shares to accept common shares in lieu of their preferred shares and cancel unpaid accrued dividends on such preferred shares.
 

 It is well settled in this state that, where the action ■of the corporation in canceling or redeeming shares is illegal, the shareholders are not relegated to the remedy provided by Section 8623-72, General Code.
 
 Johnson
 
 v.
 
 Lamprecht,
 
 133 Ohio St., 567, 15 N. E. (2d), 127. 'The failure of the plaintiffs in the instant case to avail "themselves of the statutory remedy of “appraisal” of "their shares is not a bar to this action, unless the action of the corporation was authorized by statute.
 

 The factual situation in this ease is quite similar to "that presented by the record in the case of
 
 Wheatley, Trustee,
 
 v.
 
 A. I. Root Co.,
 
 147 Ohio St., 127, 69 N. E. (2d), 187. In the
 
 Wheatley case,
 
 the plaintiffs were the owners of preferred shares on which they were entitled to receive five per cent per year dividends in preference to all other shareholders, and such dividends were cumulative. The shares were likewise redeemable at the option of The. A. I. Root Company, at any time after January 1, 1917, at par and accumulated dividends. The holders of such preferred shares were •entitled to preference in liquidation, to the extent of the par value thereof, over the holders of common shares, and the holders of the preferred shares had no vote in the election of directors or at shareholders’ meetings.
 

 
 *460
 
 In that case it was disclosed that the plaintiffs’’ shares were issued at various dates, the first January 4, 1911, and the last April 13, 1926.
 

 On December 17, 1943, when unpaid dividends on such preferred shares had accumulated in the sum of $50 per share, The A. I. Root Company adopted a plan of recapitalization. That plan canceled the right of existing holders of preferred shares to receive unpaid; accrued dividends before dividends could be paid on the common shares, compelled surrender of the old-shares for new nonvoting, noncumulative shares, plus-one share of class A common redeemable at $40 and' $10 cash, provided a sinking fund to redeem the class-A shares and exchanged outstanding common shares-for a new class B common, two shares for one.
 

 The action by that corporation was taken under the-provisions of Section 8623-14 (3) (i), General Code, as in effect July 24, 1939 (118 Ohio Laws, 182). As of’ that date this section expressly authorized the “discharge, adjustment or elimination of rights to accrued' undeclared cumulative dividends on any such class.”' This court held in the
 
 Wheatley case,
 
 supra, that such plan of recapitalization impaired vested contractual-rights of shareholders, protected by the Constitution of Ohio, which rights were thereby violated by the —retroactive application of Section 8623-14 (3) (i),. General Code.
 

 It is to be noted that the shares which were involved-in the
 
 Wheatley case
 
 were all issued prior to the General Corporation Act (112 Ohio Laws, 9) which became-effective June 9, 1927. The provisions of that act were not applicable to those shares, and, therefore,. Section 8623-14, General Code, granting the corporation the right to change the terms of outstanding-shares by amendment of the articles of incorporations could not affect those shares.
 

 
 *461
 
 In the instant case, however, the shares were issued after the effective date of the General Corporation Act (June 9, 1927), and the provisions thereof, as to the lights of a corporation to provide for the change of the classes of shares, are applicable. An examination of Section 8623-14, General Code, as in effect at that date, does not disclose any statutory authority to cancel unpaid cumulative dividends, and it is clear that such power was not granted to a corporation by the General Assembly until the amendment in 1939. The amendment, effective July 24,1939, is not applicable to this case by reason of the fact that the action of the corporation in recapitalizing was completed on February 2,1939, which was prior to the effective date of that, amendment.
 

 The corporation was fully authorized to amend its-capital structure, with the limitation, however, that it was precluded from adopting any amendment of its: charter which would impair vested rights of the preferred shareholders to receive their unpaid cumulative dividends. Such amendment would effect a retroactive application of the provisions of Section 8623-14, General Code, and would constitute an impairment of the constitutional rights of such shareholders. The principle involved was the same as announced and applied in the
 
 Wheatley case, supra.
 
 In that case, as in this, statutes in effect at the time the shares wére originally issued became a part of the contract of the corporation with its shareholders.
 

 The parties to such agreement are presumed to •know the extent of the authority conferred upon the corporation by the applicable statutes then in effect. However, there is no constitutional inhibition against the corporation proceeding to amend its capital structure, except so far as such amendment is sought to be applied retroactively.
 

 
 *462
 
 As of the date of the recapitalization, February 2, 1939, the holders of the first preferred shares were no longer entitled to cumulative dividends thereafter becoming due. They were, however, entitled to receive all dividends accruing prior to that date. The Court of Appeals was, therefore, in error when it found the plaintiffs were entitled to receive dividends accruing subsequent to the date of the adoption of the recapitalization plan.
 

 It is argued in this case that the action of the corporation is justified because it was insolvent at the time of recapitalization. The record, however, does not disclose this insolvency. From balance sheets attached to the record the surpluses of the corporation through the various years were as follows:
 

 1929, $ 82,054.70
 

 1930, $ 86,598.86
 

 1931, $ 26,044.10
 

 1932, $ 15,326.53
 

 1933, $ 10,746.16
 

 1934, $ 2,942.56
 

 1935, $ 1,997.54.
 

 1936, $ 3,692.19
 

 1937, $ 6,807.82
 

 1938, $ 3,001.89
 

 In 1939, after the recapitalization, the surplus was $116,312.19, which surplus was created by the cancellation of the preferred shares and the carrying without valuation of 4,000 of no par common shares on the balance sheet. These common shares were carried without valuation for the year 1940, in which year the surplus was $145,672.33. In 1941 the shares were again returned to the balance sheet at a valuation of $150,000, and the surplus was $18,811.70. It is to be noted that at no time up to 1939 was there an absence ■of a surplus, and the vested rights of these sharehold
 
 *463
 
 ers are not to be governed by the financial condition of the corporation. Of course, the directors need not declare the dividends, but it is also clear that the shareholders could have refused to consent to the recapitalization plan, in which case in the event of liquidation, they would have been entitled to their ascertained share of the assets of the corporation. There is no authority in law for a corporation to employ the years of poor business to destroy preferences which they had previously pledged to holders of preferred shares. See
 
 Wildermuth
 
 v.
 
 Lorain Coal & Dock Co.,
 
 138 Ohio St., 1, 32 N.E. (2d), 413.
 

 It was pertinently stated in the opinion of Judge Turner in that case as follows:
 

 “Of course, the dissenting shareholder may not prejudice the rights of creditors, but it never was the intention of the Legislature that corporate management might secure capital upon the representation that the investment was to be safeguarded by provisions acceptable to the investor and then, after the investment had been made, that the corporate management or a majority of its shareholders might repudiate any part of the contract through which it had secured a part of its capital.”
 

 Since the record discloses that dividends have been paid to the holders of common shares, there can no longer be any question that the owners of the preferred shares are entitléd to the dividends then due them. The action of the corporation, wherein it appropriated from its surplus funds for the payment of dividends, in and of itself entitles the preferred shareholders to their dividends to the extent that such distribution from surplus was made to holders of the common shares.
 

 For the reasons stated, the judgment of the Court of Appeals is modified as indicated and the case is re
 
 *464
 
 manded to the Court of Common Pleas for further proceedings in accordance with this opinion.
 

 Judgment modified and cause remanded.
 

 Weygandt, C. J., Hart, Zimmerman, Sohngen and Stewart, JJ., concur.