**OHIO STATE LIFE INSURANCE COM-
PANY et al., Appellants,**

v.

**Ray A. CLARK et al., Appellees.**

**No. 13851.**

United States Court of Appeals
Sixth Circuit.

Feb. 8, 1960.

Robert L. Barton and William S. Evatt, Columbus, Ohio (Donald J. Hoskins, Columbus, Ohio, on the brief), for appellants.

William E. Knepper, Columbus, Ohio (Edward B. Raub, Jr., William A. Wick, Indianapolis, Ind., Richard L. Miller, Columbus, Ohio, on the brief), for appellees.

Before McALLISTER, Chief Judge, and MILLER, Circuit Judge, and BROOKS, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

This declaratory judgment action was brought by the appellees on behalf of themselves as mutual plan policyholders of The Columbus Mutual Life Insurance Company and on behalf of The Columbus Mutual Life Insurance Company itself, hereinafter called Columbus Mutual, and on behalf of all mutual plan policyholders of that company against the appellant, Ohio State Life Insurance Company, hereinafter called Ohio State, and directors, officers and stockholders of both companies. It involves the conflicting claims of the mutual plan policyholders of Columbus Mutual and the stockholders of that company, including its principal stockholder, Ohio State, to the beneficial ownership of the surplus of Columbus Mutual, which, together with certain reserves and net profits for the year 1957, totaled as of December 31, 1957, $19,184,658.66. Jurisdiction is based upon the amount involved and because of diversity of citizenship and because the

action arises under the Constitution of the United States. The District Judge found in favor of the mutual plan policyholders, from which ruling this appeal was taken.

The facts are not in dispute. Columbus Mutual is a legal reserve life insurance company, organized in 1906 under the laws of Ohio as a stock insurance company, with an authorized capital of $100,000.00 divided in 1,000 shares of $100.00 par value each. The original articles were amended by the company's shareholders to increase the company's authorized capital stock in the years 1910, 1913, 1920, 1921 and 1922. The company's present authorized capital is $500,-000.00, divided in 5,000 shares of $100.00 par value each, all of which are issued and outstanding. Except for these increases of capital stock there have been no other amendments to the Columbus Mutual charter.

Columbus Mutual has been a well managed and successful life insurance company. As of December 31, 1957, it had approximately 160,000 policyholders who owned insurance in force in the amount of $479,919,138.00. As of that date the company's total assets were valued at $134,883,105.00. The business of the company has been managed and directed by a Board of Directors elected by the company's shareholders, as provided in Article VI of its charter. The company's policyholders have never had a voice in either the election of the directors or officers, or in the management of the company's business. Since it commenced business in 1906 there have been approximately 500,000 holders of its insurance policies, of which some 160,000 own policies which are currently in force.

Under Article III of its charter, Columbus Mutual is authorized to write policies of insurance "on both the mutual and stock plan." The company has written policies on the "mutual plan" primarily. Mutual plan policies are "participating" policies in that the terms of such policies expressly provide that such policies are entitled to share in the profits of the company to the extent that such profits are apportioned from time to time to the respective mutual plan policies by the company's Board of Directors. "Stock plan" policies contain no such participation clause.

Article V of the Columbus Mutual charter is as follows:

"Fifth. Dividends may be declared and paid on the outstanding stock; provided that the total dividends declared or paid shall not exceed an amount computed at the rate of ten (10) per cent per annum on the par value of the stock from the date of original issue to the date of its retirement, and, provided further that no dividend will exceed an amount equal to ten (10) per cent per annum on the par value of the stock from the date of its original issue to the date of payment of dividend.

"Dividends on capital stock shall be paid from the surplus of the company, and the directors may pay off from such surplus and retire all of the issued and paid up capital stock at the price of two hundred dollars ($200.00) per share; and may from such surplus, when deemed advisable by the directors, return to the holders of stock the amounts which may have been paid to the company by the stockholders over and above the par value of the stock subscribed and paid for by them respectively. Subject, however to the payment of dividends, the retirement of stock, and the return to the holders of stock of the amounts which have been paid to the company over and above the par value of the stock subscribed, the surplus of the company shall belong to the holders of policies on the mutual plan, and shall be apportioned and distributed on such equitable plan as the directors may provide.

"When all of said capital stock shall have been so retired and the amounts, if any, paid to the company by stockholders over and above the par value of the stock subscribed

and paid for by them shall have been returned, said company shall be reorganized, reincorporated or converted, in any manner permitted by law, into a mutual company composed of the policyholders in this company. The subscriptions for such stock and the certificates of stock representing the same shall contain a provision whereby the subscriber to and holder of such stock shall agree and assent to the provisions of this charter."

Each policy issued by Columbus Mutual has contained a provision to the effect that the policy constitutes the entire contract between the company and the policyholder. Each mutual plan insurance policy issued by the company has contained a provision to the effect that such policy is entitled to share in the divisible surplus of the company as apportioned or determined by the company.

Ohio State is a legal reserve stock life insurance company, organized in 1906 under the laws of Ohio. Ohio State has prospered so that as of December 31, 1957, it had insurance in force in the amount of $384,955,905.00 and total assets of $88,614,777.00. As of that date its unassigned surplus amounted to almost $5,000,000.00.

During the year 1956 Ohio State acquired 4,977, or 99.54%, of the 5,000 authorized and outstanding shares of Columbus Mutual. It acquired this stock for $6,470,100.00, being at the rate of $1,-300.00 per share. It acquired this Columbus Mutual stock for the avowed purpose of merging the two companies into a single large life insurance company of almost double the number of policyholders than was possessed by either of the companies alone, and possessed of sufficient assets and breadth of insurance coverage to insure greater protection to all policyholders, and to enable it to compete on favorable terms with other large insurance companies in the United States.

For the purposes of the merger and in order that Columbus Mutual might prospectively conduct its business in conformity with the method of business of Ohio State, the shareholders of Columbus Mutual, including Ohio State, have attempted since November, 1956, to amend Article V of the Columbus Mutual charter. The proposed amendment of Article V has been regarded by certain shareholders of Columbus Mutual as an attempt to raid the surplus of Columbus Mutual to the detriment of that company and its policyholders. Although Ohio State and other stockholders have vigorously denied this charge, they considered it advisable in the interest of public relations to abandon various proposed amendments to Article V and to finally propose the amendment which is now in issue.

The proposed amendment to Article V provides in substance that (1) the unassigned surplus as of December 31, 1956, shall be held and used as a special surplus for policyholders for protection of the holders of participating policies of the company, and no dividends to any stockholders of the company shall be payable therefrom; (2) annually, for a period of twenty-five (25) years, there shall be added to this special surplus from the earnings of the company a sum equal to the net earned interest rate on the mean invested assets after all taxes based on income; (3) regular dividends shall be paid from the earnings of the company to all participating policyholders without distinction, and additional dividends may be paid out of the special surplus for policyholders, as the directors in their sole discretion may from time to time provide, only to the holders of participating policies of the company in force on the effective date of the amendment; (4) in the event of dissolution and liquidation at any time so long as any participating policies of the company in force on the effective date of the amendment are then in force, such policyholders shall be entitled to distribution from such special surplus, as then existed, in amounts representing their percentage interest in such surplus at the time of the effective date of the amendment; and (5) at the maturity of the last participating policy in force on

the effective date of the amendment, the special surplus, as then existing, shall be permanently held for the protection of all policyholders, and no dividends may at any time be declared to shareholders, except out of surplus over and above such amount.

This proposed amendment was adopted by Columbus Mutual shareholders on October 28, 1957, and was submitted to the Secretary of State of Ohio for filing. The Attorney General of Ohio approved the amendment but advised the Secretary of State to refuse to record it because of the legal objections raised by the appellees and in order that the rights of the appellees and other policyholders could be adjudicated in the Supreme Court of Ohio.

The Secretary of State refused to record the amendment. Appellants brought an original action in mandamus in the Supreme Court of Ohio for a writ compelling the Secretary of State to file the amendment. On February 11, 1958, the Supreme Court of Ohio refused to consider the merits of the case and denied the writ on technical grounds, not necessary to be here considered. See: State ex rel. Columbus Mutual Life Ins. Co. v. Brown, Secy. of State, 167 Ohio St. 309, 147 N.E.2d 848. While the amendment was pending in the Supreme Court of Ohio appellees commenced this action in the District Court.

The judgment entered in the District Court held that the surplus of Columbus Mutual belonged to its mutual plan policyholders subject to the limited rights of the stockholders to receive dividends not to exceed 10% per annum on the par value of the stock and to receive $200.00 per share for their stock upon its retirement; that the mutual plan policyholders of Columbus Mutual would be deprived of vested property rights in the surplus if the proposed amendment was permitted; and enjoined the appellants from taking any action to make effective the proposed amendment to Article V.

As will be recognized from the foregoing recital, the issues involved in this case are what rights, if any, the mutual plan policyholders of Columbus Mutual have in the surplus of that company by reason of the provisions of Article V of the company's charter, and whether or not the stockholders of Columbus Mutual, including Ohio State, have the right to amend Article V as they have attempted to do.

Counsel for the respective parties have by oral argument and very thorough briefs ably discussed many legal principles involved in this controversy. However, it is readily admitted by them that basically the problem is not a complex one after certain legal principles, which are well established in corporate and insurance law, are recognized and accepted. We believe that a statement of these principles at this time will materially aid in presenting the real issue, which can then be disposed of.

There is a fundamental difference between a corporate insurance company with stockholder ownership, doing business as a stock company, and a mutual insurance company without capital stock, doing business on the mutual plan. In the first type of case the corporation is owned and managed by the stockholders, who need not be policyholders, the corporation is operated for the purpose of profits for the stockholders and the beneficial ownership of the profits and surplus is in the stockholders. General principles of corporate law control the rights of stockholders. The rights of policyholders are controlled by their policies of insurance and any applicable statutory provisions. In the second type of case the company is owned and managed by the policyholders and the business is conducted for the benefit of the policyholders. The beneficial ownership of the profits and surplus is in the policyholders. Huber v. Martin, 127 Wis. 412, 105 N.W. 1031, 1135, 3 L.R.A., N.S., 653, 664; United States Life Ins. Co. v. Spinks, 126 Ky. 405, 422, 96 S.W. 889, 894, 103 S.W. 335, 13 L.R.A.,N.S., 1053. However, it is also possible for an insurance company to be organized as a stock corporation with stockholders, which not only does business as a stock

company, but also issues policies on the mutual plan. Ohio Farmers Indemnity Co. v. Commissioner, 6 Cir., 108 F.2d 665, 667; Hutchins Mutual Ins. Co. of District of Columbia v. Hazen, 70 App.D.C. 174, 105 F.2d 53, 57, C.A.D.C. It is this so-called "mixed company" which presents the problem of whether the beneficial ownership of the profits and surplus is in the stockholders or policyholders.

Although there was absence of statutory authority in Ohio to create a non-stock mutual insurance company, this did not preclude a stock insurance company, legally organized in Ohio, from issuing policies on the mutual plan. Sections 3587, 3588, Revised Statutes (1906). See: Ohio ex rel. National Life Ass'n of Hartford v. Matthews, 58 Ohio St. 1, 7–9, 49 N.E. 1034, 40 L.R.A. 418; Royal Trust Co. v. Equitable Life Assurance Society, 2 Cir., 247 F. 437, 438–439; Connecticut General Life Ins. Co. v. Eaton, D.C., 218 F. 188, 200–201, affirmed 2 Cir., 233 F. 1022. It is immaterial whether the term "mixed company" is properly or improperly applied to them. In substance, it is a stock company which issues some of its policies on the mutual plan. Equitable Life Assurance Society of United States v. Bowers, 2 Cir., 87 F.2d 687, 690. Columbus Mutual was a company of this kind, a stock company with authority under Article III of its charter to issue policies on the mutual plan. In such a company, the stockholders have certain rights as stockholders and the policyholders on the mutual plan have certain rights as policyholders.

It does not necessarily follow that since Columbus Mutual was a stock corporation, its assets, including surplus, were legally owned by its stockholders, to the exclusion of any interest therein by the policyholders on the mutual plan, with the result that the stockholders could deal with the surplus without obtaining the consent, and over the objections, of the policyholders. While this might be true as a general principle of corporate law in the absence of any contract to the contrary, it is settled law that a corporate charter is both a contract between the corporation and the state and a contract between the corporation and its stockholders. Allen v. Scott, 104 Ohio St. 436, 439, 135 N. E. 683; Opdyke v. Security Savings & Loan Co., 157 Ohio St. 121, 132, 134, 105 N.E.2d 9. The rights which a stockholder would have in the absence of restrictive provisions in the corporate charter, can be restricted or limited by the provisions of the charter, which become part of the contract when the stock is purchased and issued to him. Bell v. Union Central Life Ins. Co., 14 Ohio Cir.Ct.R., N.S., 385, affirmed without opinion, 92 Ohio St. 522, 112 N.E. 1087; Royal Trust Co. v. Equitable Life Assurance Society, supra, 2 Cir., 247 F. 437, 441. In the present case, the provisions of Article V control the extent to which the usual rights of the stockholders have been curtailed.

We have no difficulty in determining from a reading of Article V of the corporate charter of Columbus Mutual the extent to which the usual rights of stockholders have been restricted. Although the stockholders have the right to elect directors and retain the right to operate and manage the company, their proprietary rights in the assets of the company are limited to dividends at the rate of 10% per annum on the par value of the stock, to the payment of $200.00 per share in the event of the retirement of the stock, and to have returned to them the amounts paid to the company for the stock over and above the par value of the stock subscribed. This, together with the additional provisions providing for later reorganization into a mutual company, would carry the clear implication that the stockholders have no additional interest in the earnings and surplus of the company. The language of this portion of Article V is unambiguous. Although it does not specifically state in whom the beneficial interest in the surplus is vested, it is a limitation on the rights of the stockholders. Royal Trust Co. v. Equitable Life Assurance Society, supra, 2 Cir., 247 F. 437, 441.

If more is needed to reach that conclusion, appellees rely upon the additional sentence in Article V reading, "Subject, however, to the payment of dividends, the retirement of stock, and the return to the holders of stock of the amounts which have been paid to the company over and above the par value of the stock subscribed, *the surplus of the company shall belong to the holders of policies on the mutual plan,* and shall be apportioned and distributed on such equitable plan as the directors may provide." (Emphasis added.) They contend that this provision not only deprives the stockholders of any beneficial interest in the surplus, but vests such beneficial interest in the policyholders. The proper construction to be given to this provision in Article V is the real issue in the case.

■ Appellants contend that the words "Subject, however, to" mean "conditional upon" or "dependent on" or "provided that", with the result that the surplus "shall belong to the holders of policies on the mutual plan" *only when and if* the three conditions therein enumerated have been complied with. Only one of these conditions has been fulfilled, namely, the return of the paid-in surplus to shareholders. In support of this construction they rely upon the use of the future tense in the words "the surplus * * * *shall* belong." Cases are cited by appellants which hold that under certain circumstances the words are properly so construed. There are other cases cited by appellees which hold that the words mean "subservient to" or "charged with" as in the case of the conveyance of real estate subject to a mortgage. We believe that the meaning to be given to the words must be the one which carries out the intent of the parties as determined by the circumstances under which the contract was made. Roosevelt Materials Co. v. Nolan Brothers, Inc., 10 Cir., 264 F.2d 807, 809; Prudential Insurance Co. of America v. Nelson, 6 Cir., 101 F.2d 441, 444.

Article V looked to the future reorganization of the Columbus Mutual into a mutual company. Since its organization in 1906 it has operated chiefly in writing insurance upon the mutual plan. It has described itself in its corporate name as a mutual company. Consistent with this purpose, it has materially limited the rights of its stockholders to participate in the earnings and profits. All of this clearly indicates an intent on the part of the incorporators to preserve for the policyholders on the mutual plan the profits and surplus of the company after the limited payments to the stockholders. It would be most inconsistent to say that the stockholders were limited in their rights in the profits and surplus as hereinabove pointed out, but were nevertheless not so limited because the company had not been reorganized into a mutual company. On the other hand, it appears logical to hold that if the stockholders are not entitled to the beneficial interest in the surplus it remains in the company for the use and benefit of the policyholders on the mutual plan. The use of the words "the surplus * * shall belong" to policyholders is not inconsistent with this construction. When the company was organized there was no surplus; the surplus referred to was to be accumulated in the future. When and as accumulated it would belong to the policyholders. The words used reflect that thought.

■ It is not necessary that the policyholders be parties to this contract between the corporation and its stockholders. It is the general rule both in Ohio and elsewhere that one for whose benefit a contract is made may maintain an action upon it. Union Savings & Loan Co. v. Cook, 127 Ohio St. 26, 33, 186 N.E. 728; Rhorbacker v. Citizens Building Association Co., 138 Ohio St. 273, 276, 34 N.E.2d 751, 135 A.L.R. 988; Restatement, Contracts, Sections 135, 139.

■ We construe Article V as giving to the policyholders on the mutual plan a vested contract right to the beneficial interest in the surplus, subject to the prior limited claims of the stockholders therein. Bell v. Union Central Life Insurance Co., supra, **14 Ohio Cir.Ct.R.,**

N.S., 385, affirmed without opinion, 92 Ohio St. 522, 112 N.E. 1087; Restatement, Contracts, Sec. 142.

This ruling does not mean that the mutual plan policyholders are entitled to receive from the surplus as dividends on their policies more than is provided by the terms of the policies. As policyholders their rights are controlled by the provisions of their policies. Under their policies their rights in the surplus are limited. Equitable Life Assurance Society of United States v. Brown, 213 U.S. 25, 47, 29 S.Ct. 404, 53 L.Ed. 682; State ex rel. Ellis v. Union Central Life Insurance Co., 13 Ohio Cir.Ct.R.,N.S., 49, affirmed, 84 Ohio St. 459, 95 N.E. 1156. But, in addition to their rights under the policies they have certain proprietary rights in the surplus acquired by reason of the provisions of Article V. The cases relied upon by appellants which construe policyholders' rights under policy provisions are not controlling in a case where, as here, we are construing a policyholders' rights acquired through a provision of the corporate charter.

Nor does the ruling mean that the mutual plan policyholders are entitled to have the surplus divided between them at the present time, free from the control of the directors. We are here dealing with the beneficial interest in the surplus, a proprietary right, not the right of possession and distribution. Their claim is that they are entitled to have their beneficial interest in the surplus preserved in its present status for their benefit as mutual plan policyholders.

We recognize that in Ohio, as elsewhere, there is a reserved statutory power under which the charter of a corporation can be subsequently amended without violating the sanctity of the contract between the state and the corporation. Belden v. Union Central Life Ins. Co., 143 Ohio St. 329, 341, 55 N.E.2d 629; Opdyke v. Security Savings & Loan Co., supra, 157 Ohio St. 121, 105 N.E.2d 9. But, this does not include the right on the part of the state, acting through the stockholders of the corporation, to amend the charter retroactively in a way which will impair vested rights previously acquired under a contract between the corporation and parties other than stockholders. Coombes v. Getz, 285 U.S. 434, 441–442, 52 S.Ct. 435, 76 L.Ed. 866; International Steel & Iron Co. v. National Surety Co., 297 U.S. 657, 56 S.Ct. 619, 80 L.Ed. 961; Wheatley, Trustee, v. A. I. Root Co., 147 Ohio St. 127, 69 N.E.2d 187; Schaffner v. Standard Boiler & Plate Iron Co., 150 Ohio St. 454, 461, 83 N.E.2d 192; Partridge v. Michigan Mutual Windstorm Ins. Co., 256 Mich. 76, 80, 239 N.W. 309.

Nor is this conclusion contrary to the provisions of Sec. 3915.05, Ohio Revised Code, which provides that the policy and the application therefor shall constitute the entire contract between the parties, or contrary to the provisions of Sec. 3911.20, Ohio Revised Code, which provides that no person shall receive from any company any special favor in the dividend or any valuable consideration or inducement not specified in the policy of insurance. Those statutory provisions relate to the rights of the parties under the contract of insurance, involving such things as the parties insured, the insurance premium, cash surrender and loan values, notice of claim and proof of loss, and facts giving rise to cancellation or forfeiture. A holder of a policy issued on the mutual plan has rights both as an insured under the policy and as a co-owner of the assets of the company. Such statutes have no application to the proprietary rights of such a policyholder in the company. Kentucky Growers' Ins. Co. v. Logan, 149 Ky. 453, 454, 149 S.W. 922, 923; Jagoe v. Aetna Life Ins. Co., 123 Ky. 510, 520, 96 S.W. 598; Reserve Loan Life Ins. Co. v. Brammer, 83 Ind.App. 584, 146 N.E. 876; 1 Couch, Cyclopedia of Insurance Law, (1929 Ed.) 281, Sec. 139.

The rights which the appellees have in the surplus of Columbus Mutual are protected by Article I, Sec. 10, of the United States Constitution which prohibits the impairment by a state of a contract obligation. It is not a question of degree; under the Consti-

tution it is not to be impaired at all. Bank of Minden v. Clement, Adm'x, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857. In our opinion, the proposed amendment by the stockholders, acting under the power of corporate amendment conferred by the legislature, would be an impairment of the contract obligations of the corporation running to the appellees. Bell v. Union Central Life Ins. Co., supra, 14 Ohio Cir.Ct.R.,N.S., 385, affirmed 92 Ohio St. 522, 112 N.E. 1087; Huber v. Martin, supra, 127 Wis. 412, 105 N.W. 1031, 3 L.R.A.,N.S., 653; Royal Trust Co. v. Equitable Life Assurance Society, supra, 2 Cir., 247 F. 437; Schaffner v. Standard Boiler & Plate Iron Co., 150 Ohio St. 454, 83 N.E.2d 192.

The judgment is affirmed.