**FORRY, INC., Plaintiff–Appellee,**

v.

**NEUNDORFER, INC. and Michael Neundorfer, Defendants–Appellants.**

No. 87–3411.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 4, 1987.

Decided Jan. 11, 1988.

Thomas M. Hanculak, Joseph W. Diemert, Jr. & Assoc. Co., L.P.A., Cleveland, Ohio, Richard Raysman, Barry G. Felder (argued), Brown, Raysman & Millstein, New York City, for defendants-appellants.

Raymond Rundelli, Bruce O. Baumgartner, Charles E. Jarrett (argued), Baker & Hostetler, Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Defendants-appellants ("Defendants") Neundorfer, Inc. and Michael Neundorfer appeal the District Court's judgment granting plaintiff-appellee Forry, Inc. ("Plaintiff") a preliminary injunction in this copyright infringement action. On appeal, Defendants argue that the District Court did not have subject matter jurisdiction over this suit, and that the court erred in finding that the Plaintiff has a substantial likelihood of success on the merits and has suffered irreparable harm. The principal questions raised with respect to the matter of substantial likelihood of success on the merits are whether a mutual release the two parties previously signed bars this suit, and whether the Plaintiff's copyright notice complied with the Copyright Act, 17 U.S.C. §§ 101–810. Since we find that the District Court did not abuse its discretion in granting the preliminary injunction, we affirm.

The factual background of this litigation is as follows. In the mid–1970's Elliot Drysdale, the president of the Plaintiff, became acquainted with Defendant Michael Neundorfer. Drysdale, an electrical engineer, designed a rapper control[1] for the Defendants. They arranged that Defendant Neundorfer, Inc. would buy the parts for the rapper controls, and that Drysdale would manufacture them and sell them back to Neundorfer, Inc., which would then sell them to its customers. The arrangement continued until 1978, when Drysdale formed Drysdale, Inc. In November, 1978 Drysdale, Inc. and Neundorfer, Inc. entered into an agreement whereby Neundorfer, Inc. became the exclusive sales agent for electrostatic equipment applicable to ESPs manufactured by Drysdale, Inc. This arrangement continued until sometime in 1984, when Neundorfer, Inc. filed suit against Drysdale, Inc. for breach of contract, tortious interference with contractual relationships, misappropriation of trade secrets, breach of fiduciary duty, and unfair competition. Drysdale, Inc. counterclaimed for breach of contract, tortious interference with contract, unfair competition and interference with business relationships, breach of fiduciary duty, prima facie tort, and violations of state antitrust law. The parties settled the suit by a Settlement Agreement on October 30, 1984, which provided that they would execute a mutual release with regard to all claims between them.

In 1980 or 1981 Drysdale and a microprocessor specialist, Mecklenburg, used the technology involved in rapper controls to develop an automatic voltage control ("AVC"), which is also used in an ESP. The computer program for the AVC, the

---

**1.** The District Court described the devices involved in this litigation as follows:

A rapper control is a device used to dislodge dust particles from the collecting plates in an electrostatic precipitator (ESP). ESP's are used in industries where fossil fuels are burned, utilities, cement factories, and upper industries, to collect potential pollutants (dust particles) before they are emitted into the atmosphere. With the aid of high voltage, which charges the dust particles, the dust particles are precipitated out of the smoke and collected on metal collecting plates. These dust particles are then knocked off the collecting plates by the rappers, which act as hammers. The rapper control controls the rate at which the collecting plates are struck.

Joint Appendix at 28 n. 1.

subject of this law suit, was completed in 1983. In December of 1984 Drysdale, Inc. obtained a registered copyright on the program. In April, 1985 a second corporation of Drysdale's, Forry, Inc., merged into Drysdale, Inc. Drysdale, Inc., the surviving corporation, changed its name to Forry, Inc., and is the plaintiff in this litigation.

Immediately before the settlement of the 1984 litigation, Neundorfer, Inc., began to market its own AVC. Drysdale learned of this after the settlement was consummated. Believing that Neundorfer, Inc.'s AVCs contained copies of Forry, Inc.'s copyrighted computer program, Drysdale acquired and examined a Neundorfer, Inc. AVC. After concluding that the Defendants were infringing the Plaintiff's copyright, the Plaintiff filed the instant action. The District Court granted the Plaintiff's motion for a preliminary injunction. Defendants appeal.

### I.

■ Initially, Defendants challenge the District Court's subject matter jurisdiction over this action. They argue that the Plaintiff failed to record the transfer of the copyright from Drysdale, Inc. to the Plaintiff, and that therefore the Plaintiff is unable to bring suit under the Copyright Act. 17 U.S.C. § 205(d). The Plaintiff responds that the copyright was never transferred, and that therefore no recording was required. The District Court found that the copyright was properly assigned to Drysdale, Inc., who properly registered the copyright. The District Court further found that the merger of Forry, Inc. into Drysdale, Inc., which resulted in the Plaintiff, did not effect a transfer of the copyright, and that consequently the Plaintiff did not need to record a transfer under section 205.

Under 17 U.S.C. § 205(d) the owner of a transferred copyright must record the transfer in order to institute an infringement action. It has been held that recordation of the transfer of a copyright is a jurisdictional prerequisite to suit. *Nation's Choice Vitamin Co. v. General Mills, Inc.*, 526 F.Supp. 1014, 1017 (S.D.N.Y.1981). We agree with the District Court, however, that the copyright was never transferred. The merger agreement provided that Drysdale, Inc. would be the surviving corporation, and that the effect of the merger would be governed by Ohio Rev.Code Ann. § 1701.82. Under section 1701.82(A)(3) the surviving corporation possesses all the assets of the two corporations after the merger. Since Drysdale, Inc. was the registered owner of the copyright before the merger, and as the surviving corporation possessed it after the merger, the merger did not effect a transfer of the copyright.

### II.

■ The Defendants' remaining issues all relate to alleged errors in granting the Plaintiff's motion for a preliminary injunction. A district court, when determining whether to issue a preliminary injunction, should address four factors: 1) the likelihood of success on the merits of the action; (2) the irreparable harm that could result if the court did not issue the injunction; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed*, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985). Our standard of review on appeal from the grant of a preliminary injunction is whether the District Court abused its discretion. *Id.* Moreover, the reviewing court should not overturn the District Court's findings of fact unless it finds them to be clearly erroneous. *Id.* The Defendants make three arguments with respect to the first factor and one argument with respect to the second.

### A. THE LIKELIHOOD OF SUCCESS ON THE MERITS OF THE ACTION

#### 1. The Mutual Release

The Defendants contend that the District Court erred in finding that the Plaintiff is likely to succeed on the merits of its action. They argue that a mutual release signed as a settlement of the state court litigation

bars the Plaintiff's claim. The pertinent portion of that release is as follows:

2. Drysdale, for themselves and their respective subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees, agents and their heirs and executors do hereby release and forever discharge Neundorfer, its subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees, agents and their heirs and executors *from any and all claims, demands or courses of action of any nature whatsoever, whether or not now known,* and particularly, but without limiting the generality hereof, (1) each and every claim, demand or cause of action arising out of "Agreement By and Between Drysdale, Inc. and Wm. Neundorfer & Co., Inc., dated November 6, 1978 ["], (2) *all claims of any right, title or interest in and to any product presently manufactured by Neundorfer,* and (3) *each and every claim alleged implicitly or explicitly in Case No. 71199, Court of Common Pleas, Cuyahoga County, Ohio.*

Joint Appendix at 81 (emphasis added). The Defendants argue that three different clauses of the release bar the Plaintiff's claim. The Plaintiff, naturally, disputes their interpretation, and further asserts that even if the release bars claims for infringement occurring prior to the execution of the release, it cannot bar infringement that took place after it.

#### a. The general release clause

■ The Defendants first argue that the language whereby Drysdale released them from "any and all claims ... of any nature whatsoever, whether or not now known" bars the Plaintiff's copyright infringement action.[2] The District Court refused to read the general language of release as including copyright rights, stating that if it did it would find "strong evidence to point to Neundorfer's having fraudulently induced the signing of the release." Joint Appendix at 41.

It has been held that the meaning to be given the words of a contract must be the one that carries out the intent of the parties as determined by the circumstances under which the contract was made. *Ohio State Life Ins. Co. v. Clark,* 274 F.2d 771, 777 (6th Cir.), *cert. denied,* 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960). It has also been held that general language of release will not encompass claims of which the releasor was unaware, particularly if the releasee concealed them from him. *See, e.g., Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1182 (11th Cir. 1982) (release stating that car buyer was releasing car dealer from all claims arising out of new car did not encompass car buyer's claim under the Truth In Lending Act because car buyer was unaware that release would encompass such a claim); *See generally* Annot., 171 A.L.R. 184 (1947). Drysdale was not aware at the time he signed the release that Neundorfer, Inc. had started to manufacture an AVC, and he testified that he thought that Neundorfer, Inc. only manufactured rapper controls, a different sort of product. Furthermore, Neundorfer admitted that he never disclosed to anyone that Neundorfer, Inc. was manufacturing an AVC, and indeed Defendants' counsel admitted at oral argument before this Court that Drysdale "absolutely did not know" that Neundorfer, Inc. had begun to manufacture AVCs. Accordingly, since Drysdale was unaware that Neundorfer, Inc. was manufacturing AVCs, the general language of release should not bar the Plaintiff's claim.

#### b. The "presently manufactured" clause

■ The Defendants' second contention as to the release is that by releasing them from "all claims ... in and to any product presently manufactured by Neundorfer," the Plaintiff gave up its right to enforce its copyright in the AVC program, because at the time of the signing of the release the Defendants were manufactur-

---

2. Since defendant Michael Neundorfer is the president of defendant Neundorfer, Inc., the re-

lease, if valid, is valid by its language as to him.

ing an AVC encoded with the Plaintiff's program. The District Court, however, held as a matter of law that Neundorfer, Inc. was *not* manufacturing the Plaintiff's program. The court explicitly distinguished the manufacture of the AVC from the manufacture of the program, reasoning that copyright law distinguishes the ownership of copyright rights from the ownership of the material object in which the copyrighted work is embodied. 17 U.S.C. § 202. Consequently, the court concluded, Neundorfer, Inc.'s manufacture of an AVC containing the Plaintiff's program did not give it any rights in the program itself. The Defendants argue that this holding is clearly erroneous because the manufacture of an AVC containing the program, an integral part of the AVC, necessarily involves the manufacture of the program.

The evidence is clear that Neundorfer, Inc. started manufacturing AVCs in late September or early October 1984, and that the AVCs contained direct copies of the Plaintiff's program.[3] However, even if we were to agree that the District Court erred in concluding that the Defendants were not manufacturing the program, it would not increase Defendants' likelihood of success. There is an additional reason that this clause does not bar the Plaintiff's claim. As we previously noted, the Plaintiff was completely unaware that Neundorfer, Inc. had started to manufacture AVCs. Seven months before the signing of the release Neundorfer deposed that Neundorfer, Inc. had never attempted to engineer or manufacture its own AVC. Drysdale testified that since it takes two years to develop an AVC, he assumed at the time he signed the release, based on Neundorfer's deposition, that they were not manufacturing an AVC. Thus we hold that the District Court did not abuse its discretion in finding that this clause does not bar the Plaintiff's claim, not because Neundorfer, Inc. was not manufacturing the program, but because the Plaintiff was unaware that Neundorfer,

Inc. had begun to manufacture AVCs before the parties signed the release. Moreover, even if this clause barred any claim for damages for infringement prior to the signing of the release, the injunction relates to future use of the copyright.

### c. The state litigation clause

■ The Defendants' third contention is that the Plaintiff's claim is barred by the clause in the release that releases them from all claims "alleged implicitly or explicitly in Case No. 71199, Court of Common Pleas, Cuyahoga County, Ohio." Joint Appendix at 81. The Defendants argue that the state litigation involved the same claims as this litigation. The District Court found that neither the copyright nor any rights equivalent to it were or could have been encompassed in that law suit, and that consequently the clause did not bar the Plaintiff's copyright claim.

Neither the complaint nor the answer specifically alleges any sort of claim as to the Plaintiff's AVC program. Drysdale testified that the state law suit was about the exclusive sales agreement between Drysdale and Neundorfer, Inc. and that neither copyright infringement nor ownership of software was an issue. Although that litigation did involve the use of proprietary information, Drysdale testified that the information related only to rapper controls, not to any software. Consequently, the District Court did not err in finding that this portion of the release does not bar the Plaintiff's present suit.

### 2. Res Judicata

The Defendants next argue that the Plaintiff cannot have a substantial probability of success on the merits because the state court judgment bars this suit by virtue of res judicata. The District Court held that this argument was "wholly without merit" because the state court did not have subject matter jurisdiction over the copyright issues involved in this case.

---

**3.** The District Court found that in addition to copying the original program, the Defendants subsequently developed three other programs which were substantially based upon the Plaintiff's program. This clause of the mutual re-

lease cannot bar these subsequent programs since they were not "presently manufactured" by the Defendants. Therefore we discuss only whether this clause bars a claim for the copying of the Plaintiff's original program.

■ In some circumstances a state court judgment may preclude a subsequent action that is in the exclusive jurisdiction of the federal courts, such as a copyright action. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). In *Marrese* the Supreme Court stated that the full faith and credit statute, 28 U.S.C. § 1738, directs a federal court to apply the preclusion law of the state in which the prior judgment was rendered, in this case Ohio. *Id.* at 380, 105 S.Ct. at 1331–32. This Court, interpreting the res judicata law of Ohio, has stated that "[a]lthough claim preclusion is utilized by the Ohio courts, those courts have required that the second suit be between the same parties and involve the same cause of action for res judicata to apply. *Norwood v. McDonald*, 142 Ohio St. 299, 305, 52 N.E.2d 67, 71 (1943)." *City of Canton, Ohio v. Maynard*, 766 F.2d 236, 238 (6th Cir.1985). "[T]he proper way to determine whether two causes of action are the same is 'to consider the facts necessary to sustain the claim.' " *Id.* (quoting *Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir.1985)). Here, the state court litigation involved the exclusive sales agreement between Drysdale and Neundorfer, Inc., which pertained to rapper controls, not AVCs. The present litigation involves an alleged infringement of the copyright of a computer program for an AVC. Although rapper controls and AVCs are both used in ESPs, it is clear that they are two separate components and two separate products. Since it appears that the facts necessary to sustain the present copyright infringement claim are completely different from those that would have been necessary to sustain the prior claim, the doctrine of res judicata does not bar this claim.

### 3. Validity of the Copyright Notice

■ It is undisputed that the plaintiff failed to affix any notice of copyright to the microprocessor chips containing the copyrighted program until some time in mid-1984,[4] about a year after the software

development was completed. The Defendants contend that the Plaintiff failed to comply with the notice requirements of the Copyright Act, sections 401–06, in three ways. First, the Defendants claim that the Plaintiff failed to comply with section 405(a)(2), which provides:

(a) Effect of Omission on Copyright.—The omission of the copyright notice prescribed by sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

. . . . .

(2) registration for the work has been made before or is made within five years after the publication without notice, *and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered....*

(Emphasis added). The Defendants claim that since the Plaintiff didn't make any effort to affix notice to those copies of the program that had already been distributed, it failed to comply with section 405(a)(2). The District Court held that the language of section 405(a)(2) does not require a copyright holder to try to affix notice to those copies that have already been distributed, but only to those copies that "are distributed ... after the omission." Section 405(a)(2). This holding is not only supported by the plain language of the statute, but agrees with the Ninth Circuit's holding in *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1433 (9th Cir.1986) and with the Fourth Circuit's holding in *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 444 (4th Cir.1986), and is consistent with the legislative history of the section. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 147 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad. News 5659, 5763 ("[Section 405(a)(2) requires] that the copyright owner make a 'reasonable effort' after discovering the error, to add notice to copies or phonorecords distributed thereafter"). Only one circuit has held that section 405(a)(2) requires the

---

**4.** The copyright was registered on December 17, 1984.

owner to make an effort to add copyright notice to copies that have already been distributed to the public. *Canfield v. Ponchatoula Times*, 759 F.2d 493 (5th Cir. 1985). Nimmer, commenting on the case, stated that "[g]iven that no requirement exists to place a notice on copies already distributed to the general public ..., it is submitted that this ruling is erroneous." 2 M. Nimmer, *Nimmer on Copyright* ¶ 7.13[B], at 7–94 n. 38.1a (1987). We adopt the Ninth and Fourth Circuits' interpretation of section 405(a)(2), and consequently the District Court did not err in finding that the Plaintiff complied with section 405(a)(2).

■ The Defendants next argue that the Plaintiff's notice was inadequate to effect the protections of the Copyright Act because it did not comply with section 401. They argue that the form of the notice was defective because it used the symbol "(C)" instead of a "C" in a circle, as specified by section 401(b)(1). The Plaintiff claims that the statute is silent on the question of the effect of a statutorily defective notice, and contends that since its notice fulfilled section 401's purpose of preventing innocent persons from infringing the copyright, it sufficed. The District Court held that the form of the notice substantially complied with the statute and that it was adequate to give notice that the Plaintiff owned a copyright on the program in the chip.

*Videotronics, Inc. v. Bend Electronics*, 586 F.Supp. 478 (D.Nev.1984) held that a letter "C" enclosed within a hexagon met the statutory requirements, but suggested in dicta that the symbol "(C)" might not be sufficient because parentheses, unlike a hexagon or a circle, would not completely enclose the "C". *Id.* at 481. However, if a "C" in a hexagon is sufficient, an argument exists that a "C" in parentheses is sufficient. Defendants here had actual notice of copyright. The trial of this action may provide a better record on which to finally decide whether the symbol "(C)" is sufficiently similar to a "C" in a circle to serve as notice of a copyright. Plaintiff is apparently now using the "C" in a circle. It may therefore be entitled to rely on 405(a)(2) even if the earlier symbol was not sufficient.

■ The Defendants' third argument as to the notice of copyright on the chip is that it did not comply with section 401(c), which requires the owner to affix the notice "to the copies in such manner and location as to give reasonable notice of the claim of copyright." The Plaintiff had put the notice on the underside of the chip, such that it was between the chip and the circuit board. The Plaintiff contends that the only way to copy the program is to physically remove the chip from the board, and thus the notice complies with 37 C.F.R. § 201.20(c), which requires the notice to be affixed such that it is not concealed from view upon reasonable examination. The District Court noted that "[i]t is the program contained within the microprocessor chip which is copyrighted, not the chip itself." Joint Appendix at 35. Furthermore the court found that "[t]he evidence is undisputed that the program cannot be printed out nor can it be copied without removing the chip from the circuit board." *Id.* Once removed, the copyright notice would be clearly visible, and so the court held that the location of the notice sufficiently complied with section 401(b). *Id.*

We find that the District Court did not err in determining that the location of the copyright notice was adequate under section 401(c). One court has held that *any* location is sufficient if it is such as to notify anyone seeking to copy the work of the existence of the copyright. *Coventry Ware, Inc. v. Reliance Picture Frame Co.*, 288 F.2d 193, 195 (2d Cir.) (notice of copyright of wall plaques on small printed label attached to back of plaques was sufficient notice under prior Copyright Act), *cert. denied*, 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 (1961). "Thus, notices placed upon the ... underside of a work may be perfectly proper." 2 M. Nimmer, *supra*, ¶ 7.10[A][1] at 7–53 to –54 (footnote omitted). The Plaintiff has a likelihood of success on the issue of reasonable placement of the notice.

## B. WHETHER THE PLAINTIFF WILL SUFFER IRREPARABLE HARM

The Defendants claim that the District Court also erred in finding that the Plain-

tiff would suffer irreparable harm if the court did not issue the preliminary injunction, the second factor of the analysis. They concede that a plaintiff in a copyright infringement action establishes a rebuttable presumption of irreparable harm by showing that its valid copyright has been infringed. *See, e.g., Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 525–26 (9th Cir.1984). They argue, however, that they successfully rebutted the presumption by showing that the Plaintiff unreasonably delayed its seeking of a preliminary injunction. Although the Plaintiff first accused Neundorfer, Inc. of infringing its copyright in April, 1985, it did not institute legal action until February, 1987.

It has been held that an unreasonable delay between the time when a plaintiff is first apprised of the infringing acts and the time of filing suit will rebut the presumption of irreparable harm. *See, e.g., Clark Equip. Co. v. Harlan Corp.*, 539 F.Supp. 561, 570 (D.Kan.1982) (three years from time plaintiffs first saw copies on defendant's premises unreasonable); *American Fabrics Co. v. Lace Art, Inc.*, 291 F.Supp. 589, 592 (S.D.N.Y.1968) (seven months unreasonable). The Plaintiff claims, however, that it did not unreasonably delay bringing suit. Drysdale testified that he learned in April, 1985 only that Neundorfer, Inc. was manufacturing an AVC, but he didn't have actual evidence of infringement until the early months of 1987, when he was able to obtain one of Neundorfer, Inc.'s chips. Until then, the Plaintiff argues, it was not able to comply with Fed.R.Civ.P. 11, which requires an attorney to have a "belief formed after reasonable inquiry [that a pleading] is well grounded in fact." Thus the circumstances are different from those of *Clark*, where the plaintiff waited three years after it was sure its copyright had been infringed before bringing suit. It has been held that fourteen months' delay was not unreasonable where the plaintiff was not unduly dilatory, investigated its claim, and did not sleep on its rights. *Meredith Corp. v. Harper & Row Publishers, Inc.*, 378 F.Supp. 686, 691 (S.D.N.Y.), *aff'd*, 500 F.2d 1221 (2d Cir.1974). In light of the case law the District Court did not err in holding that the Defendants failed to rebut the presumption of irreparable harm.

Accordingly, we AFFIRM the judgment of the District Court.