**Diane GALPER, Plaintiff,**

v.

**The UNITED STATES SHOE CORPORATION and Lenscrafters, Inc., Jointly and Severally, Defendants.**

**No. 92–76757.**

United States District Court, E.D. Michigan, S.D.

March 8, 1993.

---

Beier Howlet P.C. by Frank S. Galgan, Daniel C. Devine, Bloomfield Hills, MI, Barry M. Feldman, Birmingham, MI, for plaintiff.

Miller Canfield Paddock & Stone by Steven A. Roach, James D. Robb, Detroit, MI, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION

GADOLA, District Judge.

On December 31, 1992, defendants filed a motion for summary judgment and a motion to dissolve preliminary injunction. Plaintiff responded to both of these motions January 22, 1993. Defendants filed a reply to each response February 2, 1993.

### I. FACTS

Defendant Lenscrafters manufactures and sells prescription eyeglasses, primarily through retail stores located in shopping centers throughout the United States. As a service to its customers, Lenscrafters subleases space in its retail stores to doctors of optometry.

In December 1986, plaintiff subleased from Lenscrafters, for a three-year term, two offices; one in Novi, Michigan, and the other in Shelby Township, Michigan. In 1989, plaintiff renewed her sublease for a second three-year term. And in 1992, plaintiff renewed her sublease for a third three-year term.

Under the agreements signed by the parties in 1986, 1989 and 1992, plaintiff agreed, *inter alia*, to pay rent pursuant to a rent schedule attached as Schedule D to the agreements; and to provide Lenscrafters with accurate monthly worksheets reporting her sales. Agreement, paragraph 6(B). Plaintiff also agreed that Lenscrafters could audit her books and records to verify her calculation of monthly sales. *Id.* at paragraph 6(D). The calculation of the amount of rent owing plaintiff for each month is dependent upon her monthly sales, with rent increasing as sales increase, up to a certain capped amount.

During the summer of 1992, Lenscrafters audited the books and records of plaintiff for

1989, 1990 and 1991. Previous to the audit, Lenscrafters had been aware that plaintiff reported all refunds as originating out of the Shelby store regardless of whether they actually originated out of the Novi or Shelby stores. Consequently, Lenscrafters knew prior to the audit that an audit of plaintiff's records would reveal some discrepancy between rent owing and rent paid. Lenscrafters claims, however, that it found that plaintiff misapplied not only refunds but also sales. Plaintiff claims that Lenscrafters knew since 1986 that plaintiff used unorthodox accounting methods, and that Lenscrafters, by not objecting to her methods prior to 1992, waived their right to claim that such account reporting constituted breach of contract.

Lenscrafters contends that plaintiff misreported sales paid for by Blue Cross/Blue Shield plans and misreported third party sales, reporting both as income for only the Novi location, regardless of the actual source of sales. According to Lenscrafters, plaintiff allegedly did not report some sales at all. In addition, Lenscrafters alleges that over the three years of 1989–91, plaintiff underreported sales at the Novi location by $493,611.57 (33%), and underreported sales at the Shelby location by $146,534.21 (17%). As a result, plaintiff failed to pay to defendants $50,786 in rent.[1]

On August 18, 1992, Lenscrafters sent to plaintiff a letter itemizing the discrepancies found in her records and requesting her to pay $53,283.00 in backrent, $16,648.06 in interest, and $3,633.51 for the costs of the audit, as per the terms of the agreement. *Id.* at paragraph 6(D)(7). The letter detailing the discrepancies gave indications that the discrepancies did not adversely affect Lenscrafters' relationship with plaintiff and clearly indicated that Lenscrafters intended to continue the relationship. Exhibit D to Complaint.

After some negotiation, plaintiff paid to Lenscrafters $62,743 in September 1992. In making this payment, plaintiff believed that the matter was settled and that the business relationship between her and Lenscrafters would continue. Notwithstanding their conciliatory letter of August 18, 1992, Lenscrafters, however, allegedly considered this payment only as a settlement of the monies due and owing in backrent. Lenscrafters allegedly viewed plaintiff's underreporting as a material breach of the agreement. In a letter dated October 28, 1992, defendant Lenscrafters notified plaintiff of its belief that plaintiff had materially breached the terms of the January 1992 agreement and requested that plaintiff quit the premises.

Lenscrafters claims that plaintiff's misreporting of sales breached two separate provisions of the agreement between them. First, plaintiff breached the agreement by failing to pay rent when due as required by paragraphs 6 and 21(B)(1). This defect in her performance plaintiff cured by her September 1992 payment of $62,743. Second, Lenscrafters alleges that plaintiff breached the agreement by failing to report her sales accurately as required by paragraph 6(B)(2); under paragraph 21(B)(3) of the agreement, this breach is grounds for termination of the agreement and eviction from the premises, regardless of subsequent cure.

After receiving the October 28, 1992 notice to quit from Lenscrafters, plaintiff filed suit in Oakland County Circuit Court on November 10, 1992. On November 20, 1992, the Oakland County Circuit Court entered a preliminary injunction in order to maintain the *status quo* until the case could be resolved on the merits. On November 20, 1992, defendants removed the case to federal court on the basis of diversity jurisdiction.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of

---

1. Lenscrafters initial determination was that plaintiff had failed to pay $53,283 in rent. At plaintiff's request, this figure was adjusted downward.

summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. SUMMARY JUDGMENT ANALYSIS

In her complaint, plaintiff alleges three counts. Count I alleges breach of an accord contract: plaintiff claims that her payment of backrent, interest and audit costs in September 1992 constituted an accord between the parties which Lenscrafters is breaching by attempting to terminate the business relationship. Count II alleges breach of the 1992 contract agreement: plaintiff claims that defendants' notice to quit is a breach of the 1992 contract agreement because the accord settlement constituted an enforceable waiver of any breach plaintiff may have committed and because defendants have known for several years of plaintiff's accounting methods and their willingness to continue the business relationship constitutes waiver. Count III alleges that the 1992 agreement between plaintiff and Lenscrafters is really a franchise agreement and that defendants violated the Franchise Investment Law, Mich.Comp. Laws Ann. §§ 445.1501 *et seq.*

In their motion for summary judgment, defendants do not address directly the three counts of plaintiff's complaint. Instead they argue that plaintiff breached two provisions of the agreement, the agreement to pay rent proportionally to net sales and the agreement to accurately report her sales. Defendants claim that although plaintiff did cure

the first breach by paying the backrent with interest and costs, she neither cured nor, under the 1992 agreement, had the right to cure the second breach, that is, the failure to accurately report her sales. In the pleadings on the motion for summary judgment, neither of the parties to this action addresses in any depth plaintiff's claim that defendants waived their right to terminate based on plaintiff's inaccurate sales reporting. Instead, defendants incorrectly characterize plaintiff's complaint as raising only two claims: first, that plaintiff cured her defaults for 1989, 1990, and 1991 by paying the rent owed; and second, that the agreement is covered by the franchise act which allegedly requires that a franchisee be provided an opportunity to cure. This characterization of plaintiff's complaint essentially lumps Counts I and II of plaintiff's complaint into two issues: whether plaintiff cured her rental default and whether she had the right to cure her inaccurate reporting default; and ignores the issue of whether, during the course of their almost seven years of business dealings and during the audit and settlement negotiations, defendants, by their conduct, waived their right to terminate the contract based on plaintiff's rental and reporting defaults. Because the court finds this latter issue to be the primary issue raised by plaintiff's complaint, and because the court finds, for the reasons stated *infra*, that the agreement is not a franchise agreement under the Michigan Franchise Investment Law, defendants' motion for summary judgment shall be denied in part and granted in part.

### A. Count III of Plaintiff's Complaint: The Franchise Investment Law

Under the Franchise Investment Law, a "franchise" is defined as

a contract or agreement, either express or implied, whether oral or written, between 2 or more persons to which *all of the following apply:*

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor.

(b) A franchisee is granted the right to engage in the business of offering, selling, or distributing foods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate.

(c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Mich.Comp.Laws.Ann. § 445.1502(3) (1979) (emphasis added). Section 445.1503 defines the terms "franchise fee," and delineates exceptions to and exemptions from that definition. Specifically listed as *not* constituting payment of a franchise fee are

(d) Payments made in connection with the lease or agreement to lease of a franchised business operated by a franchisee on the premises of a franchisor as long as the franchised business is incidental to the business conducted by the franchisor at such premises.

Mich.Comp.Laws Ann. § 445.1503(1)(d) (1979). The court finds that plaintiff's optometry business is a franchised business operated by plaintiff-franchisee on the premises of defendant Lenscrafters, the franchisor, as a business incidental to the Lenscrafters business of manufacturing and selling prescription eyeglasses. The only payments made by plaintiff to defendants were payments made in connection with the sublease of office space on Lenscrafters' leased retail outlet premises. Therefore, no franchise fee, as defined by the Franchise Investment Law, was paid by plaintiff either directly or indirectly. Consequently, the agreement between plaintiff and defendants is not a franchise agreement because it does not meet the requirements of section 445.1502(3).

### B. Counts I and II of Plaintiff's Complaint

As discussed *supra*, defendants fail to argue in their motion for summary judgment that there is no genuine issue of material fact as to Counts I and II of plaintiff's complaint. The motion pleadings ignore the factual issues of course of dealing and waiver raised by Counts I and II and request that the court "enter judgment declaring that the Agreement has been terminated and that

Plaintiff must vacate the premises immediately." Defendants Motion at 4–5. The court finds that defendants have failed to point to "an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553. Thus, defendants' motion for summary judgment as to Counts I and II shall be denied.

■ At the hearing on this motion for summary judgment, defendants asserted that this motion was brought on defendants' counterclaim that plaintiff has breached the terms of the agreement by inaccurately reporting her sales for 1992.[2] Defendants argue that whatever accord agreement may have been reached as to the years 1989 through 1991, the accord did not apply to the year ending December 31, 1992 because plaintiff's accounts for that year had not been audited. However, defendants specifically informed plaintiff in their letter of August 18, 1992 that defendants believed that plaintiff's accounting methods would likely result in inaccurate reporting for 1992.[3] Thus, it is possible that a trier of fact could determine that defendants waived their right to terminate based on inaccurate reporting of which defendants were aware at the time the parties were negotiating the amount allegedly owing to defendants for 1989–1991. Thus, there remain genuine issues of material fact as to whether the accord agreement for the years 1989–91 (if any such agreement in fact was reached) effected a waiver of defendants' right to terminate based on inaccuracies in plaintiff's 1992 accounting records of which defendants were aware at the time of the alleged accord agreement. Defendants motion for summary judgment on its counterclaim of breach will therefore be denied.

## IV. DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION

■ Defendants claim that under Michigan law, the Circuit Court of Oakland County is not vested with jurisdiction to preside over summary proceedings to recover possession and that therefore the circuit court lacked subject matter jurisdiction *to enjoin* defendants from bringing a summary proceeding to evict plaintiff. In support of this argument, defendants rely on Mich.Comp.Laws Ann. § 600.5704 (1979), which provides, "The district court, municipal courts and the common pleas court of Detroit have jurisdiction over summary proceedings to recover possession of premises under this chapter." Contrary to defendants' argument, this section does not restrict the jurisdiction of the circuit court; rather, the section merely extends the jurisdiction of the lower courts.

Furthermore, the subject matter of the case out of which the preliminary injunction arose is a breach of contract action over which the circuit court clearly has jurisdiction. Defendants' argument is wholly specious. This court will not dissolve the preliminary injunction on the ground that the circuit court lacked jurisdiction. Nevertheless, because the preliminary injunction was not issued by this court, the court will review the premises on which the injunction was issued and determine for itself whether a preliminary injunction should issue in this case.

■ The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir. 1992). Nevertheless, when determining whether to issue a preliminary injunction, a district court should address four factors: 1) the likelihood of success on the merits of the action, 2) the irreparable harm that could result if the court does not issue the injunction, 3) the impact on the public interest, and 4) the possibility of substantial harm to others. *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1987).

---

2. The written motion requests the court "to dismiss *the complaint* and to enter judgment which declares that the Agreement has been terminated...." Defendants' Motion at 4–5 (emphasis added).

3. Defendants' letter to plaintiff states, "We recommend that you review the above exceptions and make the necessary corrections in the reported sales and rent payments for 1992." Ex. B to Defendants' Motion at 2.

■ Because the court finds, *supra*, that defendants have failed to even address the issues raised by Counts I and II of plaintiff's complaint, and that defendants therefore have failed to point to an absence of evidence as to genuine issues of material fact, the court cannot, at this time, make a determination as to which side is likely to succeed on the merits. The court does find, however, that any summary proceeding action brought by defendants at this time would be premature. Under Mich.Comp.Laws Ann. § 600.-5714, entitled "Grounds for summary recovery of possession; ...," a person may use summary proceedings to recover possession only when that person is *entitled* to possession. In this case, the very issue of whether defendants are entitled to possession is yet to be decided and is dependent upon resolution of the breach of contract issues. A preliminary injunction prohibiting defendants from instituting a summary proceeding of eviction will formalize the court's desire that the parties refrain from proceeding as if a breach has occurred until the issues raised by plaintiff's complaint and defendants' counterclaim are resolved.

■ On the issue of whether irreparable harm is likely to occur if the preliminary injunction does not issue, defendants claim that plaintiff could quantify any amount of money she loses as a result of her eviction and that therefore plaintiff has an adequate remedy at law. Plaintiff claims, however, that an eviction is substantially likely to injure her reputation as a professional and drive away customers and that such losses are impossible to quantify in money damages. The court agrees with plaintiff and finds that if plaintiff were evicted she likely would suffer irreparable harm in the form of damage to her reputation as a professional.

■ On the third issue, whether the injunction would impact adversely on the interests of the public, defendants make two simplistic arguments: first, that the public will not be injured by plaintiff's eviction; and second, that "public policy certainly cannot favor depriving a party of its rights to proceed with a valid claim." Defendants' Brief at 10–11. Defendants' second argument begs the question; that is, whether defendants

have a "valid claim" to possession of the premises is an issue to be decided in this case. To state that defendants' claim is valid and plaintiff's claim is not does not suffice as a public policy argument disfavoring the injunction.

Plaintiff argues, on the other hand, that her optometry practice serves approximately 5,000 patients and that her eviction from her offices would disrupt the service she provides to those patients. Defendants' argument in rebuttal is that plaintiff can serve those patients from a different location and that therefore the public would not be injured. The court finds that an eviction would likely disrupt plaintiff's optometry practice and her service to local residents. Therefore, public policy favors the issuance of a preliminary injunction.

■ Finally, the court must consider whether the preliminary injunction would be likely to cause substantial harm to others. Defendants argue that they would "suffer substantial harm because they would be unable to pursue their legal rights and remedies"; that defendants would like to re-lease the premises to another optometrist "to maintain continuity in the services offered their customers. Indeed, two optometrists do not know if they can lease the office space"; and that "[d]efendants fear that Plaintiff will not live up to her end of the Agreement and otherwise will drive away customers of Lenscrafters." Defendants' Brief at 9–10. Defendants' first claim that they would be unable to pursue their legal rights and remedies again begs the question; the question in this case being "what are the parties legal rights and remedies?" Defendants' second claim is baseless: defendants do not present any evidence that plaintiff has done anything to interrupt the "continuity in the services offered [defendants'] clients." Finally, defendants' speculative claim that perhaps plaintiff will "not live up to her end of the Agreement" and will drive away customers is without any foundation, particularly since a preliminary injunction has been in effect now for three months and defendants offer no evidence that such speculative fears have materialized during that time.

Defendants admit that plaintiff has paid all back rent due and owing as a result of the discrepancies in her account reporting methods, and they do not allege that her actions have damaged them in any way. Thus, the court can find no evidence that the preliminary injunction is likely to cause substantial harm to anyone.

■ Defendants point out that plaintiff has not posted a bond as security for the circuit court's preliminary injunction. Under Rule 65(c) of the Federal Rules of Civil Procedure, "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper....*" (Emphasis added). The United States Court of Appeals for the Sixth Circuit has held that the district court must expressly address the question of whether a bond is required as security for a preliminary injunction. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978). Nevertheless, the ultimate decision of the issue is within the discretion of the trial judge. *Id.; USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir.1982). In this case, defendants offer no evidence that maintaining the *status quo* will cause them any injury. Therefore, the court finds that no bond is necessary in this case.

## ORDER

Therefore, it is hereby ORDERED that defendants' motion for summary judgment as it pertains to Count III of plaintiff's complaint is GRANTED.

It is further ORDERED that defendants' motion for summary judgment as it pertains to Counts I and II of plaintiff's complaint is DENIED.

It is further ORDERED that defendants' motion for summary judgment as it pertains to any of the counts alleged in defendants' counterclaim is DENIED.

It is further ORDERED that defendants' motion to dissolve the preliminary injunction is DENIED, and the preliminary injunction granted plaintiff in the state court proceeding is hereby continued and renewed without bond.

SO ORDERED.