99 F.3d 1139
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry E. SAMMS, Plaintiff-Appellant,
v.
QUANEX CORPORATION, Defendant-Appellee.
 No. 95-2173.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1996.
 
 Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; and CARR, District Judge.*
 PER CURIAM.
 
 
 1
 Larry E. Samms appeals the district court's order granting his former employer's motion to dismiss his ERISA, age discrimination, tort, and rescission claims based on a general release signed by Samms shortly after his termination. Samms also appeals the district court's decision to deny his motion for leave to file an amended complaint.
 
 
 2
 Larry E. Samms was employed as a general foreman of Cold Draw Operations at the Michigan Seamless Tube Division of Quanex when, on August 31, 1992, he was terminated. On September 17, Samms signed a Release and Memorandum of Understanding and a supplemental Letter of Agreement. It provided that Samms:
 
 
 3
 forever and fully ... release[d] and forever discharge[d] Quanex ... of and from any and all attorneys' fees, costs, claims, judgments, debts, causes of action, grievances, demands and proceedings of any kind, at law or in equity, including but not limited to claims for damages for discrimination (including claims of age discrimination under the Age Discrimination in Employment Act, as amended, and applicable state law), breach of contract, personal injury, defamation and emotional harm that Employee has claimed, could claim, or may claim against Quanex in any state or federal forum, whether administrative or judicial, resulting or to result, from the acts, omissions, conduct or otherwise of Quanex up to the present date, including, but not limited to, all claims arising out of Employee's employment with Quanex and the termination of that employment relationship.
 
 The stated intent of the Agreement would:
 
 4
 irrevocably bar any action or claim whatsoever by Employee against Quanex for any resultant injuries or damages, whether known or unknown, sustained or to be sustained, as a result of any of Quanex's acts, omissions and conduct having occurred up to the present date including, but not limited to, Employee's employment with Quanex and the termination of that employment.**
 
 
 5
 The Release also stated that Samms voluntarily resigned his employment with Quanex on August 31, 1992.
 
 
 6
 In exchange for signing the Release, Samms received a substantial benefits package. Specifically, Quanex awarded Samms with outplacement services, valued at $7,013.00, extended dental and eye care coverage, $54.29, three months' pay, less normal employee withholdings, $14,610.00, and additional severance pay for Samms' home purchase, $530.00. The total consideration given Samms when he signed the Release was $22,207.29. Samms at no time returned the consideration he received for signing the Release.
 
 
 7
 On October 14, Quanex notified all retirees, including Samms, that the company was modifying its group benefit health care plan. The new program required retirees to pay a portion of their health care premiums. Beginning in 1993, Quanex deducted money from retirees' pension benefits in order to cover the retirees' new obligation. Samms paid $196.44 per month in 1993, $202.52 per month in 1994, and $238.50 per month in 1995, as a result of this co-pay plan.
 
 
 8
 After living with the co-pay plan for more than two full years, Samms filed suit against Quanex on January 26, 1995. In his complaint, Samms contends that the Release he signed was invalid. He alleged Quanex was seriously considering the co-pay plan when the release was executed and thus breached fiduciary duties owed to him pursuant to 29 U.S.C. § 1104 of the Employee Retirement Income Security Act of 1974 and that Quanex has interfered with rights protected by ERISA.
 
 
 9
 On March 8, Quanex moved under 12(b)(6), and asked for a stay of discovery. Samms moved then to file an amended complaint. It sought to: (a) add Quanex's pension and health plans as defendants in Counts I and II of the complaint; (b) amend Count I of the complaint to request equitable relief only and drop his claim for damages; (c) add a claim for rescission and cancellation of the Release; and finally (d) allow Samms to tender back part of the consideration he received in exchange for the Release, but not the full amount and no actual tender was sent.
 
 
 10
 The district court granted Quanex's motion to dismiss Samms' complaint in its entirety as well as denying his motion. Here, Samms challenges that order.
 
 
 11
 We review de novo. Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir.1995).
 
 
 12
 Although Samms did not waive rights or claims that may arise after the date this Agreement was executed, paragraph nine of the Release clarifies the intent of the parties to waive all claims against Quanex up to the execution date of that document. Samms maintains that the district court should not have dismissed his state law claims and his ERISA claims because those claims did not arise until after Samms signed the Release. According to Samms, his claims do not arise until they "accrue" under the applicable statutes of limitations for the various claims. Accrual, he asserts, falls after the date he signed the Release for all of his claims.
 
 
 13
 Quanex accuses Samms of trying to obscure the plain language of the contract and the intent of the parties. The Release, Quanex argues, does not mention accrual at all. Rather, the plain language of the contract reflects the intent of the parties to absolve Quanex of liability for all conduct that occurred prior to the date of the Release.
 
 
 14
 A basic rule of contract interpretation is to strive to give effect to the intent of the parties. The plain language of the contract is controlling on that point. The critical language is contained in paragraphs eight and nine of the Release. Samms waived claims "whether known or unknown, sustained or to be sustained, as a result of any of Quanex's acts, omissions and conduct having occurred up to the present date."
 
 
 15
 There is no possible reading of that language which is consistent with Samms' claim that he did not waive claims of which he was unaware at the time he signed the Release. To adopt his interpretation would necessarily mean that entire portions of the release should be disregarded. It is clear from the language of the contract that Samms negotiated and entered this express agreement to release all claims. Samms was aware of the actual scope of the release, regardless of whether he was aware of specific prospective claims at the time of signing.
 
 
 16
 Relying on the Michigan Supreme Court case Stefanac v. Cranbrook Educ. Community, 458 N.W.2d 56 (1990), the district court barred Samms from challenging the Release. The tender back doctrine adopted in Stefanac requires that a plaintiff return all the consideration recited in a settlement agreement before or at the same time he commences a proceeding raising a legal claim challenging the agreement. The Fifth Circuit Court of Appeals has adopted this same rule. Wittorf v. Shell Oil Co., 37 F.3d 1151 (5th Cir 1994).
 
 
 17
 Samms challenges the applicability of the tender back rule to the facts of this case. He claims, as a matter of contract interpretation, that the ERISA claims and the state law rescission claims were not covered by the Release. The tender back of consideration received for signing a release is an absolute prerequisite to avoidance of the release under Michigan and federal law, even where, as here, a plaintiff alleges that he was fraudulently induced to sign the release, or that the opposing party concealed information prior to the release. Wittorf, 37 F.3d 1151 (5th Cir 1994); Dresden v. Detroit Macomb Hospital Corp., 1996 WL 520293. The plain language of the Release makes clear that Samms exonerated Quanex from all claims.
 
 
 18
 There are times when, as a matter of public policy, courts have refused to apply the tender back doctrine. The Michigan Court of Appeals recognized one exception in Barke v. Grand Mobile Home Sales, 149 N.W.2d 236 (1967), when it allowed a retired widow to proceed with a recession claim without first tendering back the trailer home in which she lived. Here, Samms works part-time as a driver and his wife works full-time as a clerk. Samms also runs a profitable second-hand shop. Barke is distinguishable from these facts. Additionally, the former public policy exception that suggested that ERISA claims are immune to waiver has been thwarted by our decision in Miller v. Gen. Motors Corp., 845 F.2d 326 (6th Cir.1988) (specifically approving the waiver of ERISA rights).
 
 
 19
 Samms is bound by the terms of the Release. Under the tender back doctrine, Samms needed to return the consideration he received in order to challenge the Release. Though Samms insists that he was entitled to retain some of the consideration, he has yet to return any part of the consideration he received.
 
 
 20
 Because the Release does not bar future claims, much of this case revolves around issues of timing. Samms fails to distinguish between the conduct giving rise to a cause of action and the discovery of that conduct. Samms alleges that the Release impermissibly attempts to release an ERISA fiduciary (Quanex) from liability for future conduct. Also, Samms cites Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259 (6th Cir.1988), arguing that claims of which he was unaware are not subject to the Release. Samms misses the critical language in Forry that highlights the importance of the intent of the parties and the plain language of the contract. Id., at 263. Forry only applies where it appears that the parties did not contemplate the release of a certain claim. Samms contemplated and understood that this release covers claims based on any conduct occurring before execution, even those hypothetical circumstances he was unaware of at the date of execution.
 
 
 21
 We AFFIRM.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 **
 Release, p 9