NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-1139

DINESOL BUILDING PRODUCTS, LTD.,

Plaintiff- Appellee,

v.

TAPCO INTERNATIONAL INC.,
(formerly known as Tapco Products Company, Inc.)

Defendant-Appellant.

_____

DECIDED:  September 11, 2006
_____

Before NEWMAN, LOURIE, and LINN <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

Tapco International Corporation ("Tapco") appeals from the December 6, 2005 order of the U.S. District Court for the Northern District of Ohio enforcing the settlement agreement between Tapco and Dinesol Building Products, Ltd. ("Dinesol") that resolved the case before the Ohio district court and barred Tapco from pursuing claims of patent infringement in district court in Michigan.  <u>Dinesol Building Prod., Ltd., v. Tapco Int'l, Inc.</u>, No. 4:04-CV-185 (N.D. Ohio Dec. 6, 2005).  Because the district court correctly construed the settlement agreement, we <u>affirm</u>.

## I.  BACKGROUND

Dinesol and Tapco are competitors that manufacture and sell plastic building products, including standard and custom-sized plastic window shutters.  Standard shutters differ from custom shutters in that they are made available in pre-fabricated sizes to fit standard-sized windows, whereas custom shutters accommodate non-standard window sizes.  Tapco is also the owner of several patents directed to plastic building products, seven of which are at issue in this case.  Two of the patents-at-issue, U.S. Patents No. 4,875,318 and No. 4,920,708 (the "building accessories patents"), are directed to plastic building accessories, such as utility plate covers and louvered gable vents, commonly used as a finish around dryer vents, outside lights, and other utility outlets.  The remaining five patents-at-issue, U.S. Patents No. 5,704,182, No. 6,023,905, No. 6,122,875, No. 6,397,540 and No. 6,141,938, are directed to custom-sized window shutters (the "shutter patents").

In February, 2004, in response to threats from Tapco of patent infringement of the building accessories patents, Dinesol filed suit against Tapco in Ohio, seeking a declaratory judgment of non-infringement of the building accessories patents (the "Ohio action").  Tapco counterclaimed, alleging infringement of those two patents and also alleging that Dinesol's manufacture and sale of standard plastic window shutters infringes Tapco's trade dress and trademark in its standard shutters and constitutes unfair competition, "passing off" and misappropriation of the trade dress.  It is undisputed that patent infringement of the shutter patents initially was not part of the Ohio action because, at the time Tapco filed its counterclaims, Dinesol was not producing custom shutters.  However, during the pendency of the Ohio action, Dinesol

began to introduce custom shutters in addition to its standard shutters, which it had been making and selling since March 2003.

The parties entered into two settlement agreements to resolve the Ohio action. The first settlement agreement, dated June 1, 2004, resolved the patent infringement issues related to the building accessories patents. The parties agree that the first settlement agreement is not helpful to the resolution of this case and have not included it as part of the record on appeal. The second settlement agreement, dated September 10, 2004, resolved all remaining issues in the Ohio action, including Tapco's counterclaims pertaining to the plastic window shutters. The relevant portion of the September 10 settlement agreement (the "Settlement Agreement") provides:

> **4. Mutual Release**: The parties hereby mutually waive, release, and forever discharge each other, as well as their respective attorneys, agents, representatives, directors, shareholders, officers, employees, parents, successors and assigns, from and against any and all claims, actions, causes of actions, suits, debts, damages, costs, attorney's fees, liability, demands and rights whatsoever, in law or in equity, or otherwise, whether known or unknown, foreseen or unforeseen, arising out of, resulting from, growing out of or in any way connected with or which could have been part of the filing of the claims or arising out of the allegations asserted in Tapco's claims of trade dress infringement, palming-off, dilution and/or unfair competition, including all claims which could have been asserted therein, without limitations.
> Also, notwithstanding the fact that Dinesol or Tapco may hereafter discover facts in addition to, or different from, those which are known, or believed to be known, with respect to any and all claims of patent and trade dress infringement, palming-off, dilution and unfair competition; Dinesol and Tapco, and each of them, intend to, and do hereby fully, finally and forever settle and release any and all claims arising out of or relating thereto, without regard to the subsequent discovery or existence of such additional or different facts pertaining the [sic: to] such claims, except as provided below in Paragraph 4 [sic: 5], herein.
>
> **5. Estoppel and Compromise of Claims**: Should issues in the trade dress infringement, and/or claims of palming-off, dilution and unfair competition be asserted again for whatever reason, regarding any

> different designs or colors of Dinesol's plastic shutters, the Parties shall be no worse off with respect to available defenses, claims of non-infringement, invalidity, unenforceability, lack of secondary meaning, failure to acquire distinctiveness, and any argument directly or indirectly related thereto than they were on the date prior to execution of this Final Settlement Agreement, other than use of this Agreement as evidence in any proceeding or issue related to its enforcement.

(emphasis added).

In March 2005, after the Ohio action was dismissed, Tapco sued Dinesol in the United States District Court for the Eastern District of Michigan, asserting that Dinesol's custom shutters infringed the shutter patents (the "Michigan action"). In April 2005, Dinesol moved in Ohio to enforce the Settlement Agreement and to bar Tapco from asserting the patent infringement claims in the Michigan action. The Ohio court found that, "[u]sing broad and expansive language, Tapco expressly released Dinesol from and against any and all claims of patent infringement with respect to its plastic shutters" and noted that "the release extends to all plastic shutters, custom and standard." Dinesol, slip op. at 5. The Ohio court found that, because the mutual release provision of the Settlement Agreement made no reservation regarding custom shutters and expressly released Dinesol from all claims of patent infringement, notwithstanding that Tapco might subsequently discover additional or different facts from those which were known, the patent infringement claims asserted in the Michigan action were within the scope of the mutual release. Id.

Tapco appeals the Ohio court's December 6, 2005 Order. The Michigan action has been stayed pending the outcome of this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

This court applies the regional circuit's contract law in interpreting a settlement agreement. See Gjerlov v. Schuyler Lab. Inc. 131 F.3d 1016, 1020 (Fed. Cir. 1997). Under Sixth Circuit law, the interpretation of a contract is a question of law subject to de novo review. See Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc., 409 F.3d 342, 346 (6th Cir. 2005). The Sixth Circuit reviews the district court's decision to grant a motion to enforce the settlement for an abuse of discretion. Re/Max Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 645 (6th Cir. 2001).

### B. Analysis

The question in this case is whether the Settlement Agreement released Dinesol from claims that its custom plastic shutters infringe Tapco's shutter patents, thus barring the Michigan action.

Tapco contends that the Settlement Agreement does not release Dinesol with respect to its custom shutters. Tapco relies on Forry, Inc. v. Neunforter, Inc., 837 F.2d 259, 263 (6th Cir. 1998), for the proposition that "general language of a release will not encompass claims of which the releasor was unaware, particularly if the releasee concealed them from him." Tapco argues that the Settlement Agreement should not be read to include a release of claims of infringement of the shutter patents because, at the time of the Settlement Agreement, Tapco was unaware that Dinesol was manufacturing the accused custom plastic shutters. Tapco also argues that the district court erroneously held that the subject matter of the release and the Michigan action "both involve patent infringement by Dinesol's plastic shutters," Dinesol, slip op. at 6-7,

contending that the Settlement Agreement involved only trade dress infringement by Dinesol's standard plastic shutters, not patent infringement of custom plastic shutters.

We agree with the district court that the Settlement Agreement releases Dinesol from claims that Dinesol's custom plastic shutters infringe Tapco's shutter patents. The language of the Settlement Agreement is unambiguous, and the parties do not allege otherwise. By its express terms, the Settlement Agreement releases Dinesol from any and all claims in any way connected with the Ohio action and specifies further that the release includes "any and all claims of patent and trade dress infringement . . . without regard to the subsequent discovery or existence of such additional or different facts pertaining the [sic: to] such claims." "Settlement agreements, like consent judgments, reflect an agreement by hostile litigants on more than just contract terms; they reflect a compromise of contested legal positions in matters that are the subject of litigation." Panduit Corp. v. HellermannTyton Corp., 451 F.3d 819 (Fed. Cir. 2006) (citing United States v. Armour & Co., 402 U.S. 673, 681-82 (1971)). "[T]he scope of a settlement agreement must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." Id. The precise and unambiguous terms of the release provision of the Settlement Agreement include not only a general release of "all claims . . . in any way connected with" those in the Ohio action, but also a release of "all claims of patent infringement" without regard to "the subsequent discovery or existence of . . . additional or different facts." Although Tapco asserts that it was not aware that Dinesol was manufacturing its custom shutters at the time the parties entered into the Settlement Agreement, Tapco's awareness of such facts is not relevant because the Settlement Agreement unambiguously releases all related claims of patent

infringement without regard to the subsequent discovery or existence of additional or different facts. The district court therefore did not err in holding that the Settlement Agreement releases Dinesol from Tapco's claims that the custom plastic shutters manufactured by Dinesol infringe Tapco's shutter patents.[1]

Forry, cited by Tapco, is not on-point. Determinative of the court's holding in Forry (e.g., that a general release of "any and all claims" did not encompass later-filed copyright infringement claims) was that both the claims and products were entirely unrelated and there was "strong evidence" that, during settlement negotiations, the defendant concealed that it had begun to manufacture potentially infringing software. Forry, 837 F.2d at 263-64. In this case, (1) the district court found no such evidence of concealment; (2) the mutual release includes a specific release of "any and all claims of patent infringement;" and (3) the claims and products at issue in both the Ohio and Michigan cases are closely related in that they both involve claims of patent infringement and they both involve custom and standard shutters. It is undisputed that the custom shutter patents were the subject of discovery and discussion in the Ohio action. Also, the preamble of the Settlement Agreement makes specific reference to both custom and standard shutters.

Tapco also argues that the district court's opinion does not enjoin Tapco because it lacks injunctive language and does not comply with Fed. R. Civ. P. 65(d), which requires, in relevant part, that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail,

---

[1] In so holding, we decide only that the release extends to those products in existence at the time of the September 10, 2004 Settlement Agreement, not, as Tapco fears, that Dinesol "obtained a release to practice any and all Tapco patents." Products

and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." We find the Ohio court's December 6, 2005 order to be sufficiently specific because it clearly states that it is "enforcing the settlement agreement and barring the present suit."

Tapco also argues that the district court should have deferred to the Michigan court due to principles of comity on the ground that the issues in the two cases (i.e., trade dress rights related to standard plastic shutters and patent rights related to custom plastic shutters) are materially different. This argument likewise is without merit. The Settlement Agreement expressly gives the Ohio court jurisdiction to enforce its terms. Having familiarity with the products and patents at issue, the Ohio court did not abuse its discretion in determining that it was the appropriate forum for resolving the scope and enforceability of the Settlement Agreement.

CONCLUSION

For the above reasons, the decision of the district court is affirmed.

---

not in existence at the time of the Settlement Agreement are not before us.